# SHULTHIS *v.* McDOUGAL.

# BERRYHILL *v.* SHULTHIS.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

Nos. 156, 157.   Argued January 23, 24, 1912.—Decided June 7, 1912.

Where a petition of intervention is entertained and disposed of in
virtue of jurisdiction already invoked, if the decree of the Circuit
Court of Appeals is final in respect of the original suit, it is equally
so in respect of the intervention.

Whether jurisdiction depends alone on diverse citizenship or on other
grounds as well, must be determined from complainant's own state-
ment in the bill of his cause of action, regardless of what may be
brought into the suit by answer or in subsequent proceedings.

Jurisdiction of the Federal court can only rest on grounds distinctly
and affirmatively set forth; grounds of jurisdiction, other than those
of diverse citizenship alleged, cannot be inferred argumentatively
from statements in the bill.

A case is not one arising under the laws of the United States unless it
really and substantially involves a dispute or controversy respecting
the validity, construction or effect of such a law upon the determina-
tion whereof the result depends.   This rule applies peculiarly to
suits respecting rights to land acquired under laws of the United
States; otherwise all suits to establish title to land which had been
part of the public domain would be cognizable in the Federal courts.

The fact that the controversy might have arisen under the laws of
the United States does not give the Federal court jurisdiction, if the
bill does not allege the facts in that particular, and the controversy
might have arisen in another way independent of those laws.

A corporation which was organized in the Indian Territory while the
statutes of Arkansas were, under authority of Congress, in force in
that Territory is not for that reason a Federal corporation, but is to
be regarded for jurisdictional purposes as one of Oklahoma.   *Kansas
Pacific R. R. Co.* v. *Atchison, Topeka & Santa Fé R. R. Co.,* 112 U S.
414.

The action of Congress in putting the laws of Arkansas in force in the
Indian Territory by the act of February 18, 1901, 31 Stat. 794,

VOL. CCXXV—36

c. 379, was to provide a body of law for that Territory until it became a State, and the effect was the same as though those laws had been adopted by a Territorial legislature.

In this case *held*, that as the jurisdiction of the Circuit Court depended solely upon diverse citizenship, the judgment of the Circuit Court of Appeals was final; and, notwithstanding the case involved conflicting claims to allotted lands in the Creek Nation, it was not one arising under the laws of the United States.

Appeals from 170 Fed. Rep. 529, dismissed.

THE facts, which involve the determination of the question of finality of judgments of the Circuit Court of Appeals under the act of 1891, in a suit brought to determine conflicting rights to a tract of land in the Creek Nation, are stated in the opinion.

*Mr. C. L. Thomas*, with whom *Mr. Edgar A. de Meules* was on the brief for appellant in No. 156, and appellee in No. 157:

This court has jurisdiction.

The effect of the patent issued to the lessor of appellant, by the United States and the Creek Nation, requires an interpretation of § 7 of the act of June 30, 1902, 32 St. L. 500, and necessarily presents a Federal question. *McGilvra* v. *Ross*, 215 U. S. 70; *Shively* v. *Bowlby*, 152 U. S. 1.

The defendant, Kiefer Oil & Gas Company, being, as alleged in the bill, "a corporation duly organized . . . under and by virtue of the laws of the United States in force in the Indian Territory," this suit is one arising under the laws of the United States, and, therefore, the jurisdiction of this court exists in this case. *Osborn* v. *Bank of United States*, 9 Wh. 739; *Pacific Removal Cases*, 115 U. S. 1; *Nor. Pac. Ry. Co.* v. *Amato*, 144 U. S. 465; *Butler* v. *National Home*, 145 U. S. 64; *Texas & Pac. Ry. Co.* v. *Cox*, 145 U. S. 593; *Union Pac.* v. *Harris*, 158 U. S. 326; *Wash.-Idaho Ry. Co.* v. *Cœur d'Alene Ry. Co.*, 160

U. S. 77; *Texas & Pac. Ry.* v. *Gentry*, 163 U. S. 353; *Sup. Lodge* v. *Kalinski*, 163 U. S. 289; *Texas & Pac. Ry. Co.* v. *Cody*, 166 U. S. 606; *Smith* v. *Rieves*, 178 U. S. 436; *Mo. Pac. Ry. Co.* v. *Soderberg*, 188 U. S. 526; *Tex. & Pac. Ry. Co.* v. *Eastin*, 214 U. S. 153; *In re Dunn*, 212 U. S. 374; *Wolf* v. *C. O. & G. Ry. Co.*, 133 Fed. Rep. 601; *Sup. Lodge* v. *England*, 94 Fed. Rep. 369; *Sup. Lodge* v. *Hill*, 76 Fed. Rep. 468; *Freehold Land Co.* v. *Gallegos*, 89 Fed. Rep. 769; *Canary Oil Co.* v. *Standard Co.*, 182 Fed. Rep. 663.

As it appears from the bill that the original jurisdiction of the Circuit Court was not dependent entirely upon diverse citizenship, the judgment of the Circuit Court of Appeals was not final, and the right of appeal to this court exists. *Nor. Pac. Ry. Co.* v. *Soderberg*, 188 U. S. 526; *Howard* v. *United States*, 184 U. S. 676; *Sonnentheil* v. *Christian Brew. Co.*, 172 U. S. 401; *Bankers' Casualty Co.* v. *Minneapolis*, 192 U. S. 380; *Florida Central Ry. Co.* v. *Bell*, 176 U. S. 325; *Colorado Min. Co.* v. *Turck*, 150 U. S. 142; *Third St. Ry. Co.* v. *Lewis*, 173 U. S. 460.

*Mr. James P. Harrold* for appellant in No. 157.

*Mr. Geo. S. Ramsay* and *Mr. Preston C. West* for appellee in No. 156:

This court has no jurisdiction on appeal from the Circuit Court of Appeals, because the jurisdiction of the Circuit Court was dependent entirely upon the opposite parties to the suit being citizens of different States. And whether or not the jurisdiction of the Circuit Court depended solely upon the diversity of citizenship must be determined from an examination of the plaintiff's bill to the exclusion of all other parts of the record. *Colorado Min. Co.* v. *Turck*, 150 U. S. 141; *Florida Central R. R. Co.* v. *Bell*, 176 U. S. 325; *West. Un. Tel. Co.* v. *Ann Arbor R. Co.*, 178 U. S. 232; *Bonin* v. *Gulf Co.*, 198 U. S.

116; *Empire State M. & D. Co.* v. *Hanley*, 198 U. S. 293; *Bankers' Casualty Co.* v. *Minneapolis &c. R. Co.*, 192 U. S. 378; *Arbuckle* v. *Blackburn*, 191 U. S. 406.

Jurisdiction cannot be conferred upon the Circuit Court by the defendants setting up a Federal question, or making a claim to the title under some Federal law. The answer cannot be examined to aid the court in deciding this question. Cases *supra* and *Metcalf* v. *Watertown*, 128 U. S. 586; *Ayres* v. *Polsdorfer*, 187 U. S. 586; *Mountain View Min. Co.* v. *McFadden*, 180 U. S. 534; *Chappell* v. *Waterworth*, 155 U. S. 102; *Tex. & Pac. R. R. Co.* v. *Cody*, 166 U. S. 606; *Powell* v. *Brunswick Co.*, 150 U. S. 433; *Arkansas* v. *Kansas Coal Co.*, 183 U. S. 187; *Devine* v. *Los Angeles*, 202 U. S. 315; *Press Publishing Co.* v. *Monroe*, 164 U. S. 107; *Tennessee* v. *Union Bank*, 152 U. S. 454; *Eastlake Land Co.* v. *Brown*, 155 U. S. 488; *Oregon Short Line* v. *Skottowe*, 162 U. S. 491; *Spencer* v. *Duplan Silk Co.*, 191 U. S. 527; *Boston Copper Co.* v. *Montana Ore Co.*, 188 U. S. 633; *Third Street R. Co.* v. *Lewis*, 173 U. S. 458; *Shields* v. *Boardman*, 98 Fed. Rep. 455; *California Oil Co.* v. *Miller*, 96 Fed. Rep. 19.

Where jurisdiction is claimed on the ground that there is a Federal question involved, it is not sufficient that jurisdiction may be inferred argumentatively under averments, and the allegations showing the Federal question must be positive, and the Federal question must clearly appear. *Handford* v. *Davies*, 163 U. S. 274; *Iowa* v. *Chicago, M. & St. P. R. Co.*, 33 Fed. Rep. 391; *Manhattan R. Co.* v. *New York*, 18 Fed. Rep. 195.

Plaintiff's allegation that he bases title to the oil and gas in the land, and the right to operate the same and have the defendants enjoined from operating for oil and gas, is not sufficient to show a Federal question, although the plaintiff alleges that his rights exist under an oil and gas lease executed by a Creek Indian and approved by the Secretary of the Interior, as required by act of Con-

gress. *Shoshone Min. Co.* v. *Rutter,* 177 U. S. 508; *Florida Central Co.* v. *Bell,* 176 U. S. 328; *Blackburn* v. *Portland Mining Co.,* 175 U. S. 571; *Romie* v. *Casanova,* 91 U. S. 379; *Blue Bird Mining Co.* v. *Largey,* 49 Fed. Rep. 289; *Starin* v. *New York,* 115 U. S. 248; *Bonin* v. *Gulf Company,* 198 U. S. 115.

The fact that the corporation was organized under the provisions of the corporation laws of Arkansas put in force in the Indian Territory by act of Congress, does not show a Federal question. *Union Pacific R. Co.* v. *Harris,* 158 U. S. 327; *Boyd* v. *Great Western Coal Co.,* 189 Fed. Rep. 115; *Binns* v. *United States,* 194 U. S. 491.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

These are appeals from decrees of the Circuit Court of Appeals for the Eighth Circuit affirming a decree of the Circuit Court for the Eastern District of Oklahoma dismissing on the merits a bill in equity, as also a petition in intervention, brought to determine conflicting claims to a tract of allotted land in the Creek Nation. The allegations of the bill may be summarized as follows:

The complainant, Shulthis, is a citizen of Kansas. One of the defendants, the Kiefer Oil and Gas Company, is a corporation organized in the Indian Territory under the Arkansas statutes which were put in force therein by an act of Congress, and since the admission of Oklahoma as a State "has been and now is a citizen and resident of said State" and of the Eastern District thereof. The other defendants are citizens of that State, resident in that district. The intervenor, George Franklin Berryhill, is a member by blood of the Creek Nation, duly enrolled as such, and his wife is not a member.

A son, named Andrew J. Berryhill, was born to the

intervenor and his wife in May, 1901, and died in November following, leaving no brother or sister surviving. In October, 1902, the deceased son's name was placed on the roll of the Creek Nation by the Commission to the Five Civilized Tribes, and thereafter an allotment, including the tract in controversy, was made to his "heirs" from the lands of the Nation, and a deed or patent was issued to such heirs with the approval of the Secretary of the Interior. Subsequently, and in March, 1906, George Franklin Berryhill and his wife, claiming to be the sole heirs of Andrew J. and the owners in fee of this tract, executed to the complainant a lease thereof, granting to him the right to explore for and extract oil and gas from the land for the term of fifteen years. The lease was made conformably to regulations prescribed by the Secretary of the Interior, was filed with the United States Indian Agent at Muskogee, in the Indian Territory, March 21, 1906, and was approved by the Secretary of the Interior April 19, 1907. The complainant complied with the regulations, duly paid the advance royalty provided for in the lease, and claims the sole and exclusive right to prospect for and extract the deposits of oil and gas existing in and under the land, which are said to be extensive and to have a value many times in excess of $2,000. Respecting the claims and acts of the defendants the bill alleges:

"Your orator further shows that the defendants and each of them claim and assert some right, title and interests in and to said lands and particularly to the said oil and natural gas deposits adverse to your orator, but the nature of said claims of said defendants is to your orator unknown; but your orator states that they have no such right, title or interest in the said deposits of oil and natural gas or any part thereof; that whatever claimed rights the said defendants or any of them have therein, were acquired long subsequent to the right of

your orator hereinbefore set forth; and further were acquired with notice and knowledge of the lease to your orator so executed, filed and approved as aforesaid; and also of facts and circumstances sufficient to put them and each of them upon inquiry with reference thereto.

"Your orator further states that the said defendant Kiefer Oil and Gas Company, combining and confederating with the other defendants named herein, have disregarded and still disregard the rights of your orator, and in violation thereof, and without right, unlawfully and wilfully on or about the first day of April, 1907, entered upon the said above described lands, and have stationed thereon divers agents, servants and employés, whose names are to your orator unknown, and with force and arms exclude and have excluded your orator and his agents, servants and employés therefrom; and further that said defendants have bored and drilled oil and gas wells on said premises, and have and still are allowing large quantities of oil and natural gas to escape therefrom and be wasted. That by reason thereof your orator has been damaged in the sum of $25,000. And further, said defendants threaten to, and will unless restrained by this court, drill other and further wells on said land for oil and natural gas, and have and are threatening to, and will unless restrained, by means of such wells, extract said oil and gas deposits from said land and convert the same to their own use and benefit against the manifest right of your orator."

The prayer of the bill is that the defendants be decreed to have no interest or estate in the deposits of oil and gas, save as any defendant may have an 'interest in the land and be thereby entitled to the royalties secured by the lease; that the cloud cast upon the complainant's title and rights under the lease by the claims of the defendants be removed and his title and rights thereunder be quieted, and that a receiver be appointed to take possession and

proceed with the extraction and disposal of the oil and gas for the benefit of whomsoever may prove to be entitled to it. After the filing of the bill, a receiver was appointed, who took possession and proceeded as suggested. Thereafter George Franklin Berryhill, who had not been made a party to the bill, was permitted to file in the suit a petition in intervention, wherein he asserted full title in himself to the land, subject only to the lease to the complainant, specifically set forth the claims of the defendants, assailed those claims as invalid and clouds upon his title, and sought a decree establishing the latter as against the former. Answers and replications were filed, proofs were taken, and on the final hearing a decree was entered for the defendants. 162 Fed. Rep. 331. The complainant and the intervenor separately appealed to the Circuit Court of Appeals, where the decree was affirmed, 170 Fed. Rep. 529, and then the case was brought here.

Our jurisdiction is challenged by a motion to dismiss the appeals. Section 6 of the act of March 3, 1891, 26 Stat. 826, c. 517, declares that "the judgments or decrees of the circuit courts of appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy being . . . citizens of different States," and this refers to the jurisdiction of the Federal court of first instance. Thus, it becomes necessary to consider whether the jurisdiction of the Circuit Court depended entirely upon diversity of citizenship. If it did, the appeals must be dismissed.

The question is not affected by the petition in intervention, for it was entertained and disposed of in virtue of the jurisdiction already invoked; and if the decree is final in respect of the original suit, it is equally so in respect of the intervention. *Rouse* v. *Letcher*, 156 U. S. 47; *Gregory* v. *Van Ee*, 160 U. S. 643; *Pope* v. *Louisville &c. Co.*, 173 U. S. 573; *St. Louis, K. C. & C. R. R. Co.* v. *Wabash Railroad Co.*, 217 U. S. 247, 250.

In opposing the motion the appellants contend that the case arose under certain laws of the United States, presently to be mentioned, and therefore was not one in which the jurisdiction depended entirely on diversity of citizenship. The consideration of the contention will be simplified if, before taking up the specific grounds on which it is advanced, the rules by which it must be tested are stated. They are:

1. Whether the jurisdiction depended on diverse citizenship alone, or on other grounds as well, must be determined from the complainant's statement of his own cause of action as set forth in the bill, regardless of questions that may have been brought into the suit by the answers or in the course of the subsequent proceedings. *Colorado Central Mining Co.* v. *Turck,* 150 U. S. 138; *Tennessee* v. *Union and Planters' Bank,* 152 U. S. 454; *Spencer* v. *Duplan Silk Co.,* 191 U. S. 526; *Devine* v. *Los Angeles,* 202 U. S. 313, 333.

2. It is not enough that grounds of jurisdiction other than diverse citizenship may be inferred argumentatively from the statements in the bill, for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth. *Hanford* v. *Davies,* 163 U. S. 273, 279; *Mountain View Mining Co.* v. *McFadden,* 180 U. S. 533; *Bankers' Casualty Co.* v. *Minneapolis &c. Co.,* 192 U. S. 371, 383, 385.

3. A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States. If it were not, every suit to establish title to land in the central and western States would so arise,

as all titles in those States are traceable back to those laws. *Little York Gold-Washing and Water Co.* v. *Keyes,* 96 U. S. 199; *Colorado Central Mining Co.* v. *Turck, supra; Blackburn* v. *Portland Gold Mining Co.,* 175 U. S. 571; *Florida Central & P. Railroad Co.* v. *Bell,* 176 U. S. 321; *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505; *De Lamar's Nevada Co.* v. *Nesbitt, Id.* 523.

To sustain the contention that the suit was one arising under the laws of the United States, counsel for the appellants point out the statutes (Acts March 1, 1901, 31 Stat. 861, c. 676; June 30, 1902, 32 Stat. 500, c. 1323; April 26, 1906, 34 Stat. 137, c. 1876, § 22) relating to the allotment in severalty of the lands of the Creek Nation, the leasing and alienation thereof after allotment, the making of allotments to the heirs of deceased children, and the rights of the heirs, collectively and severally, under such allotments; but the bill makes no mention of those statutes or of any controversy respecting their validity, construction or effect. Neither does it by necessary implication point to such a controversy. True, it contains enough to indicate that those statutes constitute the source of the complainant's title or right, and also shows that the defendants are in some way claiming the land, and particularly the oil and gas, adversely to him; but beyond this the nature of the controversy is left unstated and uncertain. Of course, it could have arisen in different ways wholly independent of the source from which his title or right was derived. So, looking only to the bill, as we have seen that we must, it cannot be held that the case as therein stated was one arising under the statutes mentioned. As was said in *Blackburn* v. *Portland Gold Mining Co., supra,* a controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an act of Congress.

It next is insisted that the bill shows that the Kiefer Oil

and Gas Company, one of the defendants, is a Federal corporation, and therefore that under the decisions of this court in *Osborn* v. *Bank*, 9 Wheat. 738; *Pacific Railroad Removal Cases*, 115 U. S. 1, and *Matter of Dunn*, 212 U. S. 374, the case was one arising under the laws of the United States. The bill states that this company was incorporated in the Indian Territory under the Arkansas statutes, which were put in force therein by an act of Congress, and then adds that since the admission of Oklahoma as a State the company "has been and now is a citizen and resident of said State." Evidently, the pleader did not anticipate the present insistence, but proceeded on the theory that the company became an Oklahoma corporation when that State was admitted into the Union.

The corporation laws of Arkansas were put in force in the Indian Territory by the act of February 18, 1901, 31 Stat. 794, c. 379, which was but one of a series of acts of that character. Congress was then contemplating the early inclusion of that Territory in a new State, and the purpose of those acts was to provide, for the time being, a body of laws adapted to the needs of the locality and its people in respect of matters of local or domestic concern. There being no local legislature, Congress alone could act. Plainly, its action was intended to be merely provisional and not to encroach upon the powers which rightfully would belong to the prospective State. The situation, therefore, is practically the same as it would be had the corporation laws of Arkansas been adopted and put in force by a local or territorial legislature. *United States* v. *Pridgeon*, 153 U. S. 48, 52–54.

In *Kansas Pacific Railroad Co.* v. *Atchison, Topeka & Santa Fe Railroad Co.*, 112 U. S. 414, this court had occasion to consider the effect of the admission of a Territory as a State on corporations existing at the time under the territorial laws, and it was there said (p. 415):

"The admission of Kansas as a State into the Union,

and the consequent change of its form of government, in no respect affected the essential character of the corporations or their powers or rights.   They must after that change be considered as corporations of the State, as much so as if they had derived their existence from its legislation.   As its corporations they are to be treated, so far as may be necessary to enforce contracts or rights of property by or against them, as citizens within the clause of the Constitution declaring the extent of the judicial power of the United States."

Adhering to the principle of that ruling, we hold that the corporate defendant here is an Oklahoma, and not a Federal, corporation, and therefore must be regarded as a citizen of that State for jurisdictional purposes.

It follows from what has been said that the case is one in which the jurisdiction of the Circuit Court depended entirely on diverse citizenship, and so the decrees of the Circuit Court of Appeals are final.

*Appeals dismissed.*