## SECURITIES AND EXCHANGE COMMISSION v. LONG ISLAND LIGHTING CO.

### No. 4606.

District Court, E. D. New York.

Dec. 21, 1944.

David K. Kadane, Harry G. Slater and Solomon Freedman, all of Philadelphia, Pa. (Morton E. Yohalem, of New York City, of counsel), for plaintiff.

Unger & Pollack, of New York City (Milton Pollack, of New York City, of counsel), for preferred stockholders.

Charles C. Blakeslee, of New York City (Harold R. Medina, of New York City, of counsel), for defendant.

William J. Lockwood, attorney for New York Curb Exchange, appearing specially.

KENNEDY, District Judge.

The plaintiff, Security and Exchange Commission, applies for a temporary injunction restraining the defendant, its agents, servants and employees, from "directly or indirectly consummating or carrying out, or taking any action or steps to consummate or carry out or effectuate", a certain plan of reorganization readjusting the rights of its preferred and common stockholders.

The prayer for relief plainly states that the temporary injunction sought here and the final injunction sought in the action are identical.

The plaintiff, which was created by Section 4 of the Securities Exchange Act of 1934, Act of June 6, 1934, c. 404, 48 Stat. 881, 15 U.S.C.A. § 78a et seq. is charged with the administration of the Public Utility Holding Company Act of 1935, Act of August 26, 1935, c. 687, 49 Stat. 803, 15 U.S. C.A. § 79 et seq.

On November 7, 1935, the Long Island Lighting Company, the defendant here, applied to the plaintiff under Section 3(a) (1) for exemption from the act. On March 27, 1936, the Commission granted such exemption, reserving, however, in its findings and opinion, the right to amend its order if it should find that the exemption is detrimental to the public interest because of the defendant's activity, or that of any subsidiary company, or because a burden was placed upon interstate commerce.

The motion is based upon the complaint, and the complaint alone, and although the defendant appeared by attorney, it submitted no papers in opposition.

However, extended argument was had, and counsel supplied me with a number

of facts not in dispute which underlie the application.

The preferred stock of the company has never had voting rights. Arrears have been piling up on this preferred stock, and since March 27, 1936, the date when the defendant was exempted from the provisions of the Public Utility Holding Company Act, these arrears aggregate more than ten million dollars (Complaint, p. 4).

Evidently there has been desire on the part of everybody to make some adjustment in the corporate structure.

On February 29, 1944, the defendant submitted to the Public Service Commission of the State of New York a plan of readjustment, which, on April 25, 1944, its stockholders approved. This plan apparently was never acceptable to some of the preferred stockholders, who undoubtedly, in view of the increasing arrears, desired much greater control than the common stockholders were willing to give them. On July 27, 1944, the Public Service Commission of the State of New York acknowledged that it was helpless to compel the company to readjust its voting rights in accord with what could be considered "sound finance and equitable considerations" (Complaint, p. 7).

Nevertheless the defendant continued its effort to secure approval of this plan from the Public Service Commission. Thereupon, and on November 4, 1944, a protective committee of preferred stockholders applied to the plaintiff. This committee asked that proceedings under Section 3(a) of the Act be reopened, and on November 10, 1944, the Commission directed that a hearing be held to determine whether the exemption of the defendant was detrimental to the public interest and whether its order of March 27, 1936, should be revoked or amended (Complaint p. 4). Still later, and on November 21, 1944, the plaintiff on its own motion instituted a proceeding under Section 2(a) (VII) (B) of the Act to determine whether certain persons and corporations exert a controlling influence on the policy of the defendant, and whether they should not be subject to the obligations of the statute. On November 22, 1944, the two proceedings then pending were consolidated and a hearing ordered on November 27, 1944. This hearing was adjourned (not on the application of the defendant) to December 19, 1944.

In the meantime, and on December 14, 1944, the Public Service Commission of the State of New York approved the plan of reorganization, and an order effectuating the plan was filed on December 16, 1944. It was conceded on the argument by the plaintiff's attorneys that on the date last mentioned the rights of the stockholders under the corporate structure theretofore existing came to an end under New York State law. The attorney for the New York Curb Exchange, appearing specially at the argument, stated to the Court that trading in the old securities ceased on December 16, 1944, and transactions in the company's stock as modified by the reorganization commenced on December 18, 1944. In the early afternoon of December 19, 1944, there was submitted to me for signature an order to show cause containing an ex parte restraining clause as broad as the prayer for relief in the complaint itself. The motion was returnable on December 20, 1944. As will more fully appear later I had doubts about my power to grant even a temporary restraining order to the plaintiff. Nevertheless I did so.

From the argument of counsel for the plaintiff I conclude that specific jurisdiction to grant the injunction sought by the motion is not to be found in the act itself. Certainly the defendant had violated no order, rule or regulation of the plaintiff; during all the times mentioned it was specifically exempt from the jurisdiction of the commission. Defendant's proceedings in the Public Service Commission were taken openly, and apparently in full compliance with the law of the State of New York and of the administrative body to whose jurisdiction it was subject, namely, the Public Service Commission. These proceedings, as indicated, stretched over the period between February 29, 1944, and terminated on December 16, 1944. Nor did the defendant, so far as either the complaint or the argument discloses, flout or ignore any order of the plaintiff with respect to the hearing ordered under Section 3(a), or 2(a) (VII) (B) of the act. No such claim was made. The plaintiff urges, however, that during the period between the final hearings in the Public Service Commission (September 27, 1944) and the final approval of the plan (December 14, 1944) the defendant was on notice that proceedings to revoke its exemption had been set in motion. Plaintiff says that these proceedings might result ultimately in bringing the defendant within the jurisdiction of the Commission, and that if this

happened the Commission might not approve the reorganization plan. Meanwhile, says the plaintiff, security holders will proceed with exchanges under the reorganization plan "without disclosure of the fact that proceedings under the Act may require a radically different plan" (Complaint, p. 13). This in turn may result in confusion to security holders as well as substantial difficulties to the Commission in the discharge of its duties.

The defendant, among other contentions, urges that to grant even a temporary restraining order here would be to subject the defendant to intolerable difficulty. It has sought and secured the approval of the necessary State authorities to the plan and has terminated the rights of the stockholders as they formerly existed. Nothing can revive the old set of rights and liabilities; no one can substitute a new set. Meanwhile it will be impossible for the corporation, or anyone else, to determine how its stockholders shall vote.

If, as I have indicated, there is no specific statutory authority for the kind of order which the plaintiff seeks (and perhaps even if there were), it would be incumbent upon the plaintiff under general principles of equity to show that irreparable harm would result from the denial of the temporary injunction, and I use "would" in the sense that more than a bare possibility exists. I cannot say that such a showing has been made. Moreover, the plaintiff, without specific statutory authority, is asking that on the bare complaint itself I should determine that it is entitled to all of the final relief which it seeks. Plaintiff's counsel admitted on the argument that in the case at bar there was no distinction between a temporary injunction and a permanent injunction, and I agree that this is so.

Leaving all other considerations out of the matter, I doubt seriously that I have any such power as that which the plaintiff invokes.

▇▇ I think plaintiff is really seeking a decision that the courts may, in aid of the statute (Act of August 26, 1935, c. 687, 49 Stat. 803, 15 U.S.C.A. § 79 et seq.) restrain corporations not within plaintiff's jurisdiction against the commission of acts that plaintiff could deal with itself, were it later to acquire jurisdiction. Concededly this power has not been conferred upon the courts in terms by the Congress where it would most naturally be looked for, name-

ly, in the statute itself. On the argument plaintiff's counsel seemed to urge that their cause was justiciable, and the relief sought should be granted under general principles of fair dealing—of equity. It is true that federal courts have general equity powers, but only when sitting in cases otherwise within their jurisdiction as defined by Congress. Briggs v. United Shoe Machinery Co., 1915, 239 U.S. 48, 36 S.Ct. 6, 60 L.Ed. 138. And so if plaintiff would set the court in motion on principles of equity it must first bring the cause within some of the familiar fields of jurisdiction granted to the courts by the Congress, such as diversity or the existence of a federal question.

I doubt that there could be any diversity here, and certainly it is not plainly set forth in the bill of complaint. Is there a federal question? If so, it must lie in the suggestion that plaintiff, a federal agency, seeks to protect itself against acts which might hamper it in the execution of its duty to enforce the statute (Complaint, p. 13). But I believe no federal question arises unless plaintiff's right of action may be said really and substantially to involve a controversy respecting the validity or construction of an act of Congress. Shulthis v. McDougal, 1912, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205. The bill of complaint here does not disclose that any such controversy exists. Nor was it suggested in the argument that such a controversy exists, and that the granting or withholding of an injunction, either temporary or permanent, would really turn upon the construction or validity of the statute from which plaintiff derives its powers, or for that matter of any other federal enactment.

This reduces the issue to one that is comparatively narrow: Under the guise of construing the statute to determine whether the power invoked by the plaintiff may be implied may I take jurisdiction, and then either exercise that power or not, depending upon which way the appeal to discretion lies? It seems to me that if I answer this question in the affirmative, and that if the courts under the guise of construing a statute can give themselves such sweeping power, then they and not Congress are defining jurisdiction. I cannot believe that this sort of "construction" (no matter how salutary the statute, or for that matter how great the specific benefit achieved by a decision in favor of the existence of such power) can take the place of a real con-

troversy over what Congress meant by the words it employed in the statute. This is more like deciding what Congress meant by silence. When appeal is made to general principles of fair dealing and of equity it is understandable that federal Courts have at times been unwilling to renounce jurisdiction, and may have done so reluctantly; but as I understand the matter they must. And I do so, without touching questions like the wisdom or fairness of the plan of reorganization here assailed.

Nor do I consider the other questions that it would be necessary to decide in plaintiff's favor in order that the relief it asks might be granted. It was strongly urged that there is no clear showing of irreparable harm here if injunction be withheld; that the plan, having been consummated, cannot be undone, nor its execution halted without creating a chaotic condition in defendant's corporate structure; that the plan was sub judice in the administrative authority of the state for eight months before the preferred stockholders invoked plaintiff's protection, and almost four months after the Public Service Commission had in terms suggested this course to them (Complaint, p. 7). Moreover, it does not clearly appear whether these preferred stockholders have a remedy in the state courts to review the action of the Public Service Commission—a remedy that they failed to invoke. I acknowledge that this last consideration, the effect of failure to exhaust a possible remedy in tribunals of the state, is not to be charged to plaintiff. But the preferred stockholders appeared on this motion before me and were heard. It was they who set in motion at least a portion of the consolidated proceedings looking to the recapture of jurisdiction by the plaintiff. And were the merits before me I would think it proper to consider whether a temporary injunction here might do violence not only to principles of equity, but to principles of comity also.

█ It is the power to speak on these matters that I renounce. One consideration remains. I intimated to counsel at the argument that I inclined to hold the views which I here express on the question of power. Indeed, I adjourned the argument for several hours after indicating this, in the hope that counsels' research or mine would bring to light some controlling authority on the jurisdictional point. None was found. Counsel for plaintiff, in line with their duty, and no doubt appreciating

that the want of a clear precedent injured their own cause, requested that I continue in force the broad ex parte restraining order, while review of any adverse ruling was secured. Since I have reached the conclusion that I am without power to grant the relief which plaintiff asks, and therefore should not have restrained defendant at all, I feel that this course would not be proper even though precedent seems to indicate that I might be justified in following it. Merrimac River Savings Bank v. Clay Center, 219 U.S. 527, 31 S.Ct. 295, 55 L. Ed. 320, Ann.Cas.1912A, 513; Moscowitz, D. J., in Matter of Realty Associates Securities Corporation, Debtor, D.C.E.D. N.Y., 59 F.Supp. 90. I suggested instead to counsel that the length and character of any temporary ex parte restraint could with greater propriety be determined by the reviewing Court.

Motion denied, temporary stay vacated, submit order.