**Milton A. BARLOW et al.**

v.

**MARRIOTT CORPORATION.**

Civ. No. 70-710.

United States District Court,
D. Maryland.

June 30, 1971.

Paul R. Connolly, Frank X. Grossi, Jr., and Williams & Connolly, Washington, D. C., and C. Edward Jones, Baltimore, Md., for plaintiffs.

Robert W. Barker, Pierre J. LaForce and Wilkinson, Cragun & Barker, Washington, D. C., and Robert R. Bair and Venable, Baetjer & Howard, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

On August 15, 1960, defendant established a trust fund pursuant to an Employees' Profit Sharing Savings & Retirement Plan and Trust, pursuant to which defendant and its employees have since made contributions, and pursuant to which management and control of the fund is said to be vested in three trustees, who are appointed by, and serve at the pleasure of, defendant's board of directors. Plaintiffs allege that the plan, as established originally, provided that—

* * * an employee who terminated after ten years service was entitled to receive his full proportionate share of the combined contributions and the total earnings thereon accumulated in the Fund. An employee who terminated with less than ten years service was entitled to participate fully in the earnings of the Fund to the extent of his vested interest.

Article 14.13 of the plan states:

This plan is intended to qualify as a tax exempt Profit Sharing Plan pursuant to the provisions of Section 401 of the Internal Revenue Code of 1954 together with any amendments thereto.

In accordance therewith, defendant sought and obtained a ruling from the Internal Revenue Service that the plan qualified under sections 401 et seq. of the Internal Revenue Code, 26 U.S.C. § 401 et seq.[1]

The plaintiffs, six former employees of defendant who contributed to defendant's profit sharing trust, allege that defendant amended the plan in 1964 and 1967, in contravention of the original amendment provision, by eliminating or paring down rights of employees who had terminated their employment by defendant. Plaintiffs contend that the effect of those changes,

* * * in addition to constituting a breach of contract with each terminated employee, effectively discriminates in favor of Marriott officers, supervisory personnel and highly compensated employees since such persons as a class enjoy a disproportionate share of the earnings of the Pension Fund as affected by the amendments. The forbidden discrimination is accomplished as follows:

The rate of earnings of the Pension Fund upon the accumulated employer contributions has substantial-

---

1. 26 U.S.C. § 401(a) (4) provides:

§ 401. *Qualified pension, profit-sharing, and stock bonus plans*

(a) *Requirements for qualification.* —A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their bene-

ficiaries shall constitute a qualified trust under this section—

* * * * *

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

ly exceeded the annual rate of return allowed or allowable by the Trustees to the accounts of terminated employees.

The excess of earnings (measured by the difference between the amount allowed terminated employees by the Trustees and the amount actually realized on Fund investment proportionate to the accumulated contributions of these terminated employees) is transferred to the capital accounts of current employees.

By virtue of their management positions, Marriott officers, supervisory personnel and highly compensated employees tend to have greater longevity of employment with Marriott than the average employee or those in the lower employee levels and thereby disproportionately enjoy the accretions of earnings of the Fund allocable to current employees at the expense of terminated employees.

That discrimination, plaintiffs urge, disqualifies the plan under 26 U.S.C. § 401(a) (4).[2] Accordingly, plaintiffs contend, the actions of defendant's board of directors, in enacting such amendments, constituted not only a breach of trust but a violation of *federal* rights created by the Congress in favor of plaintiffs and other employees covered by the plan.

■ The plaintiffs, alleging that two of them are citizens of Maryland, two of Florida, one of Connecticut, and one of Utah, seek to institute this action as a class suit pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees of defendant. Two of the plaintiffs, Barlow and Curtis, are said to have claims each exceeding Ten Thousand Dollars ($10,000.00). Defendant is alleged to be a Delaware corporation with its principal offices located in Maryland. No claim of diversity jurisdiction is asserted by plaintiffs pursuant to 28 U.S.C.

§ 1332. Rather, plaintiffs assert the existance of federal jurisdiction under 28 U.S.C. §§ 1331 and 1340. Section 1331 (a) provides:

> § 1331. *Federal question; amount in controversy; costs*
>
> (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and *arises under the* Constitution, *laws,* or treaties *of the United States.* [Emphasis supplied.]

Section 1340 provides:

> § 1340. *Internal revenue; customs duties*
>
> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court.

Defendants have moved to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, contending, *inter alia,* that the complaint does not pose a federal question. This Court hereby "assume[s] jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief * * *," Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), and upon so doing, holds, for the reasons set forth *infra,* that subject matter jurisdiction is lacking. Therefore, this Court does not reach the question of whether plaintiffs have stated an appropriate class action, either with or without reference to principles enunciated in Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). *See also* Dierks v. Thompson, 414 F.2d 453 (1st Cir. 1969); and C. Wright, Law of Federal Courts 315–316 (1970 ed.).

Nor does this Court reach the question of whether the $10,000 requirement is or is not to be read into 28 U.S.C. § 1340

---

**2.** See n. 1, *supra.*

or whether Snyder v. Harris, *supra,* has any different application with regard to § 1340 than § 1331 or § 1332. And finally, at this time, there is no need for this Court to determine whether the relief sought herein is declaratory in nature and/or is barred by the provisions of 28 U.S.C. § 2201, which provides:

§ 2201. *Creation of remedy*

In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes,* any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. [Emphasis supplied.]

The profit-sharing trust in issue herein was executed in Maryland and provides that it—

shall be governed by, construed, administered and regulated in all respects under the law of the State of Maryland.

If plaintiffs had alleged, without more, only a breach of trust by defendant, such allegations would not premise federal question jurisdiction. But plaintiffs contend that they leap that barrier because their claims of breach of trust are based upon their view that the trustees are required by the trust plan and/or by 26 U.S.C. § 401 to administer the plan so as to continue in force and effect the initial qualification of the plan for the tax benefits of that statute. *See* Lucas v. Seagrave Corp., 277 F.Supp. 338, 342 (D.Minn.1967). *See also* Langer v. Iowa Beef Packers, Inc., 420 F.2d 365, 369–370 (8th Cir. 1970). To maintain that contention, an initial determination, construing the plan as incorporating such a requirement, is needed at the threshold. But even assuming

that determination in plaintiffs' favor, plaintiffs cannot successfully assert federal jurisdiction under § 1331 or § 1340 without establishing a federal right which is alleged to have been violated— and no such right exists in plaintiffs' favor in this case.

In Gully v. First National Bank of Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), Mr. Justice Cardozo wrote:

* * * To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist * * *. [Citations omitted; at 112–113, 57 S.Ct. at 97.]

* * * * * *

* * * "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." Shulthis v. McDougal, 225 U.S. 561, 569 [32 S.Ct. 704, 706, 56 L.Ed. 1205] * * *. [*Id.* at 114, 57 S.Ct. at 98.]

Professor Mishkin has suggested that the test is whether there exists "a substantial claim founded 'directly' upon federal law." Mishkin, The Federal "Question" in the District Courts, 53 Col.L.Rev. 157, 168 (1953).[2] Professor Wright has expressed the opinion that—

[r]ather than attempting a test it might be wiser simply to recognize

---

2. In Owens v. New York Central Railroad Company, 267 F.Supp. 252, 254 (E.D. Ill. 1967), Judge Juergens wrote:

The fact that a federal law may or will be drawn into consideration during the course of the litigation is not alone

that "the existing doctrines as to when a case raises a federal question are neither analytical nor entirely logical," and that in the unusual case in which there is a debatable issue about federal question jurisdiction, pragmatic considerations must be taken into account. [Footnotes omitted].

C. Wright, Law of Federal Courts 58 (1970 ed.).

Judged under any of those tests, the within action is deficient, since, when one stands back and takes a look at the entire factual and legal framework of this case, the conclusion is inescapable that the "rights" plaintiffs seek to enforce in this Court are those which plaintiffs contend are created by the plan as it was originally enacted. Noncompliance with the Internal Revenue Code is collateral to the resolution of the dispute over those rights. To paraphrase Professor Mishkin, plaintiffs do not have a substantial claim founded directly upon federal law, and, as Professor Wright suggests, there are present "pragmatic considerations," which strongly militate against the acceptance of jurisdiction in this case merely because the contracting parties may have contemplated the availability of certain tax benefits under federal law.

█ 26 U.S.C. § 401 *et seq.* provides an opportunity for tax deductibility of contributions to a profit-sharing trust if that trust qualifies for such deductibility. The legislative history of that statute establishes that the Congress intended to provide that deductibility only in connection with those plans which did not confer discriminatorily higher benefits upon top salaried employees as contrasted with other employees receiving lesser compensation. That legislative history also reveals a congressional purpose to eliminate tax avoidance potentialities with regard to payment of such discriminatorily favorable benefits

to key officers and employees, and, in addition, a desire to provide pension and retirement benefits for all employees. But that legislative history does not in any way indicate that the Congress intended to declare unlawful, or to prohibit, any profit-sharing plan which did not meet the requirements of section 401 (a). The Congress did not provide any criminal or civil penalty for any company (a) whose profit-sharing plan failed to meet such standards or (b) which amended a plan originally meeting such standards so as to cause that plan to fall without those standards. The only encouragement which the Congress held out with regard to the establishment of and compliance with such standards was to make available in connection with plans qualifying under the statute tax deductions not available in connection with non-qualifying plans. The tax laws contain many such "encouragement" provisions, including, for example, deductions for charitable contributions. But encouragement, and tax benefits for responding thereto, are not the same as the imposition of a requirement upon an employer to continue, after initiation, a profit-sharing plan which qualifies under section 401(a), and do not establish rights independently of constitutional rights, which employee-beneficiaries can enforce against those who fail so to continue a profit-sharing plan which has been deemed qualified under section 401(a).

H.R.Rep. No. 2333, 77th Cong., 2d Sess., states (at 50–51):

The present law endeavors to encourage the setting up of retirement benefits by employers for their employees and in pursuance of this policy permits employers to take as a deduction amounts irrevocably set aside in a pension trust or other fund to provide annuities or retirement benefits for superannuated employees.

---

sufficient to support jurisdiction in a federal court. * * * [Citation omitted].

A question of federal law is often "lurking in the background of every case;" however, in order to invoke the

jurisdiction of a federal court, there must be "a substantial claim founded 'directly' upon federal law." Johnston v. Byrd, 354 F.2d 982, 984 (5th Cir., 1965).

This provision has been considerably abused by the use of discriminatory plans which either cover only a small percentage of the employees or else favor the higher paid or stock-holding employees as against the lower-paid or non-stockholding employees. Under the present law, it is contended the officers of a corporation may set up pension plans for themselves and make no provision for the other employees. Such actions ar not in keeping with the purpose of this provision.

The amendments made by the bill are intended to remedy the two most serious abuses of the pension trust provision as follows:

(a) Coverage.—the plan must cover either (1) 70 percent or more of all employees with 5 years of service, except casual, part-time, and seasonal employees, or (2) employees qualifying under a classification found by the Commissioner of Internal Revenue not to be based upon favoritism for officers or stockholders. This latter provision would make it possible for plans that really supplement the social-security program to qualify.

(b) Nondiscrimination.—Even such extended coverage would not by itself guarantee that the pension plan would be operated for the welfare of the employees generally, because the scale of benefits could be manipulated. Therefore, the scale of benefits must be nondiscriminatory. High-salaried employees should not be favored at the expense of the low-paid employees.

The House Report continues (at 51):

The coverage and nondiscrimination requirements would operate to safeguard the public against the use of the pension plan as a tax-avoidance device by management groups seeking to compensate themselves without paying their appropriate taxes.

The Senate Report (No. 1631, 77th Cong., 2d Sess.) includes the following (at 44):

Your Committee has given careful consideration to the criticism and suggestions that have been made at the hearings of the committee and that have otherwise been brought to its attention with respect to the section of the House bill relating to pension, profit-sharing, and stock bonus trusts, annuity plans and other plans of deferred compensation.

A number of changes have been made in this respect which liberalize the treatment accorded in the House bill but which, at the same time, in the opinion of your committee, make the provision adequate to prevent abuse and tax avoidance in this field. * * *

Randolph E. Paul, Esq., then Special Advisor to the Secretary of the Treasury, and one of the most distinguished tax attorneys of his day, testified before the House Committee that—

The tax avoidance potentialities of pension trusts are well known. The use of these trusts as a tax-saving device for key officers and employees has been stimulated by increasing rates of tax. To prevent such tax avoidance we suggest that a trust should be required to meet the following standards in order to be tax exempt:

First, the right of the employee to his portion of the employer's contribution to the trust, and to its earnings, as well as to his own contribution, should be fully vested.

* * * * * *

Third, the system of contribution and benefits under the trust should not discriminate in favor of officers, shareholders, supervising employees, or highly compensated employees. [Hearings on Revenue Revision of 1942 Before the House Committee on Ways and Means, 77th Cong., 2d Sess. vol. 1, at 87 (1942).]

Similarly, Mr. Paul testified before the Senate Finance Committee as follows:

We are simply asking that trusts be more bona fide and non-tax-avoiding if they are going to get the benefit of the statute. We are not changing the rule with regard to pension trusts

at all, only the rules as to which trusts will qualify to get the benefit of the statute. [Hearings on H.R. 7378 Before the Senate Committee on Finance, 77th Cong., 2d Sess., vol. 1, at 95 (1942).]

In sum, the legislative history of section 401(a) creates no new federal rights in employees.

Where benefits or rights have been established by legislation, the courts have frequently implied the existence of appropriate private legal remedies to enforce those rights. See, e. g., J. I. Case Co. v. Borak, 377 U.S. 426, 433–434, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (injured party suing under certain provisions of the federal securities laws); Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969) (migratory workers alleging violations by a state agency and private employers of requirements of a federally funded labor program); Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2d Cir. 1956) (airline passenger seeking relief under anti-discrimination provi-

sion of Civil Aeronautics Act); Cook v. Ochsner Foundation Hospital, 319 F. Supp. 603 (E.D.La.1970) (indigent plaintiff attempting to compel hospitals, which had received Hill-Burton funds, to provide reasonable medical services); Green v. Kennedy, 309 F.Supp. 1127 (D.D.C.1970) (three-judge court), appeal dismissed sub nom., Cannon v. Green, 398 U.S. 956, 90 S.Ct. 2169, 26 L.Ed.2d 539 (plaintiffs seeking to enjoin the Secretary of the Treasury from granting tax exempt status to allegedly racially discriminatory private schools in Mississippi). But where "the statutory wording militates against implication of private remedies, as where conduct results in disqualification for certain benefits but it is in no way declared 'unlawful,' " Note, Implying Civil Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285, 290 (1960), no such remedy is available. That conclusion is buttressed herein by the position stated by the Internal Revenue Service in Rev.Rul. 70–315.[3]

3. Rev.Rul. 70–315 reads, in toto, as follows:

The purpose of this Revenue Ruling is to update and restate, under the current statute and regulations, the position set forth in Revenue Ruling 55–297, C.B. 1955–1, 393, concerning enforcement of an employee's rights under a plan that meets the requirements of section 401 of the Internal Revenue Code of 1954.

A participant in a trusteed pension plan that meets the requirements of section 401 of the Code was separated from the service of his employer after four years of service prior to attaining age 65. The plan provides that rights to benefits thereunder are vested in part for employees with four years of service who terminate employment prior to attaining age 65. The participant claims that he has been denied payment of his vested interest in accordance with the terms of the plan. He has requested the Internal Revenue Service to enforce his rights under the plan.

Section 1.401–1(b) (3) of the Income Tax Regulations provides that the law is concerned not only with the form of a plan but also with its effects in operation.

An employee's rights under a trusteed pension, profit-sharing, or stock bonus plan are governed by the terms of the plan and trust agreement and the applicable provisions of local law. The jurisdiction of the Service with respect to such a plan is limited to determinations regarding (1) whether the plan meets the applicable requirements of the Code and regulations, (2) whether amounts claimed as deductions from gross income for contributions to the plan are allowable, and (3) the tax effect of distributions under such plans. In making such determinations, consideration must be given to the actual operation of the plan.

Accordingly, it is held that the enforcement of the employee's rights in this case is not within the jurisdiction of the Service. However, any failure to make distributions in accordance with the terms of the plan will be considered in determining whether the plan continues in a qualified status and whether contributions thereunder continue to be deductible under section 404(a) (1) of the Code.

Revenue Ruling 55–297 is hereby superseded since the position stated therein is restated under current law in this Revenue Ruling.

In sum, the Congress created neither explicitly nor implicitly any right in any employee under section 401(a) (4); therefore there can be no remedy, express or implied, for the failure of an employer, such as defendant herein, to establish, or once having established to continue, any given profit-sharing plan. The rights of plaintiffs herein were created solely by the plan and must be construed thereunder in accordance with the applicable state, i. e., Maryland, law.

Defendant's motion to dismiss is accordingly granted because of lack of subject matter jurisdiction. Plaintiffs, in oral argument, stated that if this Court should grant defendant's said motion, plaintiffs desired to amend their complaint to allege diversity jurisdiction. Plaintiffs may, if they desire, file a motion so to amend their complaint, on or before the 23rd day of July, 1971.

It is so ordered.