TULSA COUNTY PUBLIC HEALTH NURSING SERVICE, INC., an Oklahoma non-profit Corporation, Plaintiff,

v.

TULSA CITY–COUNTY HEALTH DEPARTMENT, the COUNTY OF TULSA, Defendants.

No. 79–C–530–C.

United States District Court, N. D. Oklahoma.

Aug. 30, 1979.

R. Thomas Seymour, Doerner, Stuart, Saunders, Daniel & Anderson, Sherry N. Taylor, Tulsa, Okl., for plaintiff.

Imogene H. Harris, David L. Pauling, Tulsa, Okl., for City of Tulsa.

Andrew B. Allen, Tulsa, Okl., for Tulsa County.

Gary Cox, Tulsa, Okl., for Tulsa City-County Health Dept.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

BRIMMER, District Judge.

Plaintiff, Tulsa County Public Health Nursing Service, Inc., is a non-profit Oklahoma corporation which has brought suit against the Tulsa City-County Health Department, both the City and County of Tulsa, and the Tulsa County Treasurer, as defendants, claiming jurisdiction under 28 U.S.C. § 1331 relating to questions arising under the Constitution and laws of the United States. Plaintiff seeks the declaration of this Court that it is a "provider" of services under the Medicare Act, 42 U.S.C. §§ 1395c–1395qq, entitled to $225,000 which was paid by the U.S. Department of Health, Education and Welfare to the Plaintiff and turned over to the Defendant and now held by the Defendant Treasurer, and to possession of medical and fiscal records now held by the Defendant Health Department. Plaintiff sought a preliminary injunction. At the hearing upon Plaintiff's motion for a preliminary injunction, Defendants filed a Motion to Dismiss on grounds of lack of jurisdiction, but informed the Court that except for their desire to be heard on the jurisdictional question, Defendants had no objection to consolidation of the hearing on the preliminary injunction with a hearing on the merits of this case. At the end of the first day's hearing on Plaintiff's Amended Complaint the Court granted Plaintiff's Motion to Consolidate under Rule 65, F.R.C.P., required Defendants to file their Answer which they have done, but the Court reserved ruling on the Motion to Dismiss. The Defendants have re-asserted their Motion to Dismiss at the close of the Plaintiff's evidence in this case, and the Court then heard arguments of the parties on the jurisdictional issue.

Plaintiff has sought declaratory relief, based on federal question jurisdiction, but also has claimed that Defendants have violated Sections 1 and 2 of the Sherman Act, Title 15, U.S.C.

Plaintiff was incorporated in 1960 and in 1964 contracted with the Defendant Health Department to provide home nursing services in Tulsa County jointly with it. Their written agreement provided for a joint or cooperative enterprise under the direction of the Medical Director of the Defendant Health Department. The services provided are home-care nursing and therapy to patients of Tulsa County, Oklahoma and a few fringe areas of its adjoining counties. The service has grown and in the last year Plaintiff provided more than 26,000 home

nursing visits compared to 225 visits made by its only competitor in Tulsa County. The Plaintiff has interstate contacts, receiving supplies and payments from out-of-state, and using interstate facilities like highways and telephones, but essentially its activities are local in character and limited to provision of its services in the immediate area of Tulsa County.

Initially, the parties agreed each to pay a half of the personnel salaries, but in 1969 the visiting nurses were placed on the payroll of Tulsa County so that they could have the benefit of the County payroll schedule and also its fringe benefits. By 1978 all of the salaries of Plaintiff's employees were being paid by Tulsa County.

From its inception the Plaintiff and its personnel have occupied, rent-free, space provided on premises owned by the Defendant city and county, and has received from the Defendants without charge furniture, lights, heat, janitorial services, computer services, some office supplies and typewriters and some vehicles. The Plaintiff is a member of Tulsa's United Way and receives $160,000 a year, paid in monthly increments, which it keeps in a separate account from its other funds, which come to it from a minor amount of payments from insurance companies, patients and from payments made by Oklahoma Blue Cross-Blue Shield as the contractual fiscal intermediary of H.E.W.

The Medicare Act provides for funds, and encourages nursing care services of the type rendered by the program of the parties. The Plaintiff has submitted to Blue Cross as such fiscal intermediary its monthly billings for direct costs, such as salaries and mileage expense, as well as indirect costs, such as the value of the space and services provided to Plaintiff without charge by the Defendants. Blue Cross has approved and paid such statements after being satisfied that the joint entity created by the parties was a "provider of services", as that term is defined by 42 U.S.C. § 1395x(u). To become a provider of services application was made to the Oklahoma State Department of Health, which was contractually designated as its certification agent by H.E.W. It received the application, checked for qualifications and made its recommendations to H.E.W. At first, according to H.E.W. records, the "parent" of the Tulsa County home nursing operations was the Oklahoma State Board of Health but in September 1966 it was split off from the State Board. Application was then made in 1966 by the Defendant Health Department, designated therein as the "parent" organization, and the State department thereafter found the joint entity composed of the Plaintiff and Defendant Health Department to be qualified as a provider and issued number "37–7001" to that entity. Each year a renewal application had to be made and the provider certification renewed, without which Blue Cross would not make its payments on the billings. 42 U.S.C. § 1395f. In those applications the entity providing the Tulsa County nursing services was referred to as a "Combination Government and Voluntary Agency." The Oklahoma State Department of Public Health and the Dallas Regional Office of H.E.W. each regarded Plaintiff and Defendant Health Department as a combination agency. Together they had the necessary qualifications for "provider" certification, such as the medical advisory board of Plaintiff, maintenance of clinical records by Defendant, a medical director or administrator provided by Defendant, registered nurses, and occupational, physical and speech therapists of Plaintiff. H.E.W. has recognized that it has been dealing with a combined agency as its "provider", and that it was one voluntary entity formed by this 1966 written agreement, which has never been amended or rescinded. Although the name of the provider was changed in 1971 (Plaintiff's Exhibit 42) from that of the Defendant Health Department to that of the Plaintiff, H.E.W. believed that it was still dealing with the same combined entity.

The fiscal intermediary, Blue Cross-Blue Shield, has paid its billings for direct and indirect home nursing costs in Tulsa County to "Tulsa City-County HHA, # 37–7001." The letters "HHA" were meant to refer to "home health agency" as used in the Medi-

care Act. The Plaintiff has received these moneys over the years and because of the payment to it of the indirect costs for which it billed Medicare, in the last three years, there has accumulated the surplus sum of $225,000. Defendant Treasurer holds that $225,000 sum which was turned over to the Defendant Health Department by an attorney for Plaintiff. In recent months personnel of the Defendants have asserted claims to this sum, claiming it under an Oklahoma statute and because the money was paid by H.E.W. for indirect costs which Defendants have furnished without charge.

The Plaintiff wants to use these surplus funds for a "hospice" program for the terminally ill, and fears that the Defendants want the funds to use to raise salaries, or to lower taxes, or to purchase vehicles or otherwise use to the exclusion of the Plaintiff. As a result the once-happy partnership of the parties has turned sour and now they are quarreling over which has the right to these Medicare funds paid for their indirect costs and the right to the records accumulated in the course of the providing of nursing services in Tulsa County. Their contract with each other expires August 31, 1979, and thereafter without new certification of either as a "provider" and without funds and the records, the home nursing services cannot continue to be provided.

Plaintiff contends that this Court has federal question jurisdiction because the Court is asked to determine which of the parties is the "provider" of services under the Medicare Act and the applicable H.E.W. regulations. Defendants contend that the parties' dispute is purely local, not involving interpretation of a federal law, and that no Sherman Act violation is involved.

The Court finds that the foregoing facts are true and established by Plaintiff's evidence. There is no doubt at all that the certified provider, # 37–7001, of Medicare has been the combined entity of Plaintiff and the Defendant Health Department. That is established by their written contract, annual applications, and by their actions. Neither one alone was entitled to certification, according to the Oklahoma State Board of Health and the Regional H.E.W. office.

The Court therefore views this dispute as analogous to one of a partnership dissolution in which two former partners are fighting over their accumulated funds and records after they have decided that they cannot work together any longer. Undoubtedly the public of Tulsa County will be hurt if their mutual obstinacy continues; but, this Court is helpless to provide either party a remedy, or to protect the public in this matter, which it would like to do, because it is a Court of limited jurisdiction and does not have authority to adjudicate quarrels between two local entities.

There is no federal question here. The Court is not asked to interpret a vague or puzzling section or phrase of the Medicare Act, or of any of the H.E.W. regulations. They are all clear, and have been applied by the proper agencies to determine that the "certified provider" here is the combined agency of both Plaintiff and Defendant Health Department. "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends." *Shulthis v. McDougal*, (1912) 225 U.S. 561 at 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205. Justice Cardozo, in *Gully v. First National Bank* (1936) 299 U.S. 109, 57 S.Ct. 96, 98, 81 L.Ed. 70 at 114, quoted this language with approval and said: "Today, even more clearly than in the past, 'the federal nature of the right to be established is decisive—not the source of the authority to establish it.' "

The Court concludes that there is no disputed question of interpretation, validity, construction or effect of a federal law here, but only a dispute over personal property, i. e., money and records. The right to either or both will undoubtedly turn on application of Oklahoma Statutes, particularly 19 O.S. § 681 and 63 O.S. § 1–206.1, which Oklaho-

ma's own courts are best able to do. The Court believes that entitlement to the funds and records of this joint enterprise should be litigated by the parties in their State courts.

█ Plaintiff also urges that this Court has jurisdiction under the Sherman Act, Sections 1 and 2, to restrain Defendants from claiming the sum of $225,000 and the medical records, on the grounds that Defendants have conspired to monopolize the provision of Medicare certified home health care services in Tulsa County, and conspired to exclude Plaintiff from the home health care service market in Tulsa County. The Court believes that the Defendants, as agencies and arms of the State of Oklahoma, are vested with authority and, indeed have a public, legal duty to make decisions respecting the provision of home nursing services in Tulsa County. The evidence of the Plaintiff establishes no conspiracy or monopoly or scheme or artifice designed to monopolize the home health care services of Tulsa County or deprive Plaintiff of the right to provide competing services. The Defendants have discussed contingency plans in the event of final termination of the parties' 1964 agreement, but there is no Sherman Act violation in that because that is what the Defendants, as a governmental unit, are supposed to do. Finally, the Court doubts that the Defendants may be subjected to Sherman Act charges, *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

For the foregoing reasons, it is

ORDERED that the Plaintiff's First Amended Complaint, and the causes of action therein set forth, be, and they hereby are, dismissed.