SAN JUAN LEGAL SERVICES, INC., Plaintiff-Appellant,

v.

LEGAL SERVICES CORPORATION, et al., Defendants-Appellees.

SAN JUAN LEGAL SERVICES, INC., Plaintiff-Appellee,

v.

LEGAL SERVICES CORPORATION, et al., Defendants-Appellants.

Nos. 80–1710, 80–1756.

United States Court of Appeals, First Circuit.

Argued April 8, 1981.
Decided July 16, 1981.

435

Harry Anduze Montano, Santurce, P. R.,
for Legal Services Corp., Inc.

Hector G. Oliveras, San Juan, P. R., on brief, for San Juan Legal Services.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Both parties appeal from a judgment of the district court upholding the decision of a hearing examiner that the Legal Services Corporation should terminate funding for San Juan Legal Services. San Juan's appeal challenges the standard of review applied by the district court to the findings of the hearing examiner, claims that it was denied an impartial hearing at the administrative level, alleges that the district court failed to address the question of whether San Juan was given an opportunity to take corrective action, and that the court decided the case on the basis of memoranda submitted by the parties without reviewing the record of the hearing and the exhibits. Although Legal Services states that it is appealing only the question of jurisdiction under 28 U.S.C. § 1331(a),[1] it also challenges plaintiff's standing to sue and further asserts that plaintiff has no right to judicial review of the decision of Legal Services to terminate its funding.

Plaintiff San Juan is a nonprofit corporation organized under the laws of Puerto Rico. It began operating on January 24, 1974, under the aegis of and with funds furnished by the Office of Economic Opportunity (OEO). Defendant Legal Services is a nonprofit corporation organized under the laws of the District of Columbia. It was created by Act of Congress on July 24, 1974. 42 U.S.C. § 2996. Legal Services succeeded OEO as the parent body of San Juan and became responsible for overseeing its operations. There is no question that Legal Services has the statutory authority to terminate the funding of one of its grantees if the grantee does not meet the requirements of the statute and the guidelines promulgated pursuant to it. 42 U.S.C. § 2996e(b)(1)(A).[2] Legal Services is under a statutory duty to monitor and provide for independent evaluations of the legal services programs of its grantees so as to ensure that the provisions of the statute and the guidelines are being carried out. 42 U.S.C. § 2996f(d).[3]

Two separate evaluations of San Juan's program were made, one in 1975, which was initiated by the OEO, and one in 1977. Both recommended that the funding for San Juan be terminated because of serious deficiencies in its program. A preliminary determination to terminate funding was made by Legal Services, and San Juan was duly notified. San Juan then asked for a hearing before an independent hearing examiner pursuant to 42 U.S.C. § 2996j.[4] The

---

1. At the time of suit, 28 U.S.C. § 1331(a) provided:

   The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

2. 42 U.S.C. § 2996e(b)(1)(A) provides:

   (b)(1)(A) The Corporation shall have authority to insure the compliance of recipients and their employees with the provisions of this subchapter and the rules, regulations, and guidelines promulgated pursuant to this subchapter, and to terminate, after a hearing in accordance with section 2996j of this title, financial support to a recipient which fails to comply.

3. 42 U.S.C. § 2996f(d) provides:

   (d) The Corporation shall monitor and evaluate and provide for independent evaluations of programs supported in whole or in part under this subchapter to insure that the provisions of this subchapter and the bylaws of the Corporation and applicable rules, regulations, and guidelines promulgated pursuant to this subchapter are carried out.

4. 42 U.S.C. § 2996j provides:

   The Corporation shall prescribe procedures to insure that—

   (1) financial assistance under this subchapter shall not be suspended unless the grantee, contractor, or person or entity receiving financial assistance under this subchapter has been given reasonable notice and opportunity to show cause why such action should not be taken; and

   (2) financial assistance under this subchapter shall not be terminated, an application for refunding shall not be denied, and a suspension of financial assistance shall not be continued for longer than thirty days, un-

hearing was held in San Juan, Puerto Rico; it started on October 2, 1978, and terminated on October 20. Nineteen witnesses testified and 107 exhibits, many of them voluminous, were put in evidence. The hearing examiner issued a forty-page opinion on February 9, 1979, which recommended, based on his findings, that Legal Services terminate the funding for San Juan. Legal Services made a final decision to terminate funding on April 26, 1979, and San Juan was so notified.

San Juan, on May 17, 1979, brought a complaint in the District Court for the District of Puerto Rico asking for injunctive relief and a declaratory judgment. It also sought a preliminary injunction restraining the defendants from cutting off funds pending a hearing on the merits. Plaintiff based jurisdiction on 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity) and also on 42 U.S.C. § 2996 and 45 C.F.R. § 1606 *et seq.*, the regulations promulgated by Legal Services pursuant to 42 U.S.C. § 2996g(e).

In a thoughtful and comprehensive opinion, the district court denied the petition for temporary relief on December 26, 1979. Judgment on the merits in favor of defendant Legal Services was issued on September 16, 1980. These appeals followed.

*Jurisdiction*

■ Under 28 U.S.C. § 1331(a), the question is whether the matter in controversy arises under the laws of the United States. The applicable law is clear.

A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends.

*Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912). The federal law under which the claim arises must be a direct and essential element of plaintiff's cause of action. *Smith v. Grimm*, 534 F.2d 1346, 1350 (9th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). The controversy must be disclosed upon the face of the complaint and "[t]he right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). And the question must be neither "wholly insubstantial" nor "obviously frivolous." *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974).

■ An examination of the complaint shows that there is federal question jurisdiction. Stripped to its essentials, the twenty-seven page complaint alleges that the two evaluations were biased, prejudiced, incomplete and unfair, that San Juan was not notified properly of the 1975 evaluations, that the evaluations were not carried out in accord with Legal Services' own regulations, that the hearing was not conducted in accord with the statutory and regulatory requirements, and that the decision of the hearing examiner was not based on the evidence, was contrary to the evidence and was arbitrary and capricious. What San Juan wants is a review of the hearing and the decision to terminate funding. Although there is no provision in the statute for judicial review, the questions of whether San Juan is entitled to such a review and what standard should be applied, if there is a right of judicial review, depend upon the construction given 42 U.S.C. § 2996. The federal law is the only element of plaintiff's cause of action: the resolution of its claim depends upon the construction given that law, and the questions are neither "wholly

less the grantee, contractor, or person or entity receiving financial assistance under this subchapter has been afforded reasonable notice and opportunity for a timely, full, and fair hearing, and, when requested, such hearing shall be conducted by an independent hearing examiner. Such hearing shall be

held prior to any final decision by the Corporation to terminate financial assistance or suspend or deny funding. Hearing examiners shall be appointed by the Corporation in accordance with procedures established in regulations promulgated by the Corporation.

insubstantial" nor "obviously frivolous." We find subject matter jurisdiction under 28 U.S.C. § 1331(a).[5] *See Spokane County Legal Services, Inc. v. Legal Services Corp.*, 614 F.2d 662, 667 (9th Cir. 1980); *Neighborhood Legal Services v. Legal Services Corp.*, 466 F.Supp. 1148, 1151 (D.Conn.1979).

*Standing*

The pertinent law on standing has been summarized by the Supreme Court:

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). As refined by subsequent reformulation, this requirement of a "personal stake" has come to be understood to require not only a "distinct and palpable injury," to the plaintiff, *Warth v. Seldin*, 422 U.S. 490, 501 [95 S.Ct. 2197, 2206, 45 L.Ed.2d 343] (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct.

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978).

■ Legal Services contends that San Juan, as its grantee, lacks the direct personal interest necessary to challenge the funding decision because the statute was enacted for the sole benefit of "persons financially unable to afford legal assistance." 42 U.S.C. § 2996b(a). This misses the point of plaintiff's claim: that specific procedural rights guaranteed to it under the statute and regulations were violated by defendants and, as a result, its corporate existence is being terminated. We think that San

Juan has alleged a "distinct and palpable injury" that is directly attributable to the challenged conduct of defendant and, therefore, has standing to sue.

*Judicial Review*

■ The final preliminary question is whether plaintiff has a right to judicial review of the decision. The section of the statute authorizing a hearing before termination of funding, 42 U.S.C. § 2996j, is silent as to recourse to the courts. Statutory silence, however, does not indicate a legislative intent to preclude judicial review. *Stark v. Wickard*, 321 U.S. 288, 309–10, 64 S.Ct. 559, 570–571, 88 L.Ed. 733 (1944). "There is no presumption against judicial review and in favor of administrative absolutism (*see Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681) unless that purpose is fairly discernible in the statutory scheme." *Data Processing Service v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 831–832, 25 L.Ed.2d 184 (1970). And the preclusion of judicial review "is not lightly to be inferred." *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970).[6]

■ We have found nothing in the statute or its legislative history even remotely suggesting that judicial review of a hearing held pursuant to § 2996j is precluded. The only legislative history on the question is to the contrary. During the House debate on the 1977 amendments, the Honorable M. Caldwell Butler spoke as follows:

> My second point of dissent with the Judiciary Committee concerns Corporation use of an independent hearing examiner. Present law and practice provides that the Corporation cannot deny, terminate or suspend funding to a legal service program unless a "timely, full, and fair" hearing is held. (Sec. 1011(2) Public Law 93–355). Only six such hearings have been held under existing law.

---

**5.** The other claimed bases for jurisdiction, 28 U.S.C. § 1332 and 42 U.S.C. § 2996, and 45 C.F.R. § 1606 are obviously not applicable.

**6.** We realize that most of the cases holding that there is a presumption in favor of judicial re-

view involved government agencies and were decided in the shadow of the Administrative Procedure Act. The principle, however, is just as applicable to this situation.

Under existing practice, a decision to terminate funding is reviewed by a hearing officer, usually a regional director not otherwise involved with the particular legal service program under review. *The hearing officer's decision is reviewed by the Corporation President and that decision is then subject to review by the courts.* This system has proven to be fair. The District court for the District of Columbia has ruled that existing procedure satisfies both the Legal Services Corporation Act and the Constitutional requirement of due process (*The National Paralegal Institute v. The Legal Services Corporation*, Civ. No. 7–61260, dated August 12, 1976).

. . . .

The six complaints received last year and satisfactorily reviewed under existing procedures simply do not justify the imposition of a new level of bureaucracy *and judicial review* thereby dissipating the assets of the Corporation and diverting them from one intended purpose: better legal service for the poor! (Emphasis ours).

H.R.Rep. No. 310, 95th Cong., 1st Sess. 33, *reprinted in* [1977] U.S.Code Cong. & Ad. News 4503, 4525–26. Under either the pre-1977 statute or the new amendments, judicial review was assumed.[7]

We do not think that the Congress would have specifically provided that a grantee of the Legal Services Corporation was entitled to a "timely, full, and fair hearing" before its funding could be terminated, § 2996j(2), if it did not assume that judicial review would be available to a grantee who claimed that it was denied such a hearing.

■ In *Spokane County Legal Services v. Legal Services Corp.*, 614 F.2d 662 (9th Cir. 1980), the Ninth Circuit held that because § 2996d(e)(1) stated that Legal Services

"shall not be considered a department agency or instrumentality of the Federal Government," the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, did not apply. It applied the "rational basis" test. *Id.* at 669. Our review of the hearing transcript and examination of the exhibits convinces us that we need not decide what standard of review applies; by any standard, "rational basis," "substantial evidence," or even "preponderance of the evidence," the Legal Services Corporation's decision must be upheld. The result is fully in accord with the evidence, and the procedures employed were fair.

The 1975 evaluation was carried out by a team of three Spanish speaking attorneys, all of whom had a good working knowledge of the objectives and requirements of the legal services program. Two teams of evaluators were sent to Puerto Rico in 1975, one to evaluate San Juan, and the other to evaluate Puerto Rico Legal Services, Inc.[8] None of the evaluators knew before they arrived in Puerto Rico which legal service program would be assigned to them. The only attack on the 1975 evaluation which has the slightest substance relates to some politically tinged remarks made by one of the evaluators, Jose Lugo. The hearing examiner's finding that the remarks did not influence the evaluation was based on substantial evidence. Moreover, it was also a credibility finding, which is best left to the one who is conducting the hearing.

There is no evidentiary basis for faulting the findings of the examiner as to the 1977 evaluation. This evaluation was carried out by a team of six, all of whom had a good working knowledge of Spanish. The conclusions reached were substantially the same as the 1975 evaluation:

---

**7.** Defendant argues that the elimination of an amendment that would have permitted suits by "any interested person" against the Legal Services Corporation reflects an intent not to allow judicial review. The Dennis amendment, however, had a different purpose. As the House debate makes clear, the purpose of the amendment was to allow for private enforcement of

the prohibitions imposed on Legal Services by § 2996e(b), (c), (d) & (f). The defeated amendment had nothing to do with the defunding hearing provided for in § 2996j(2). 119 Cong. Rec. 2725–28 (1973).

**8.** Puerto Rico Legal Services, Inc., has had no funding problems.

(1) *Inadequate supervision of staff attorneys in the neighborhood offices.*

(2) *Program failure to provide guidance and leadership in involving the community in an ongoing community education effort.*

(3) *The program is devoid of any significant Law Reform activity and the program has failed to maintain an appropriate balance between individual service cases and group representation.*

(4) *The program has failed to identify critical issues having an impact upon the low income community.*

(5) *The program has failed to adequately use its equipment and resources to train and provide litigation skills to staff.*

San Juan made no attempt to correct the deficiencies pointed out in the 1975 evaluation until the week the 1977 evaluation began when it established a Law Reform Unit. We agree with the hearing examiner that San Juan's claim that it never saw the 1975 evaluation report until August 19, 1978, is contrary to the evidence. To be specific, there was uncontradicted testimony by Donald Grayales, Region II Director of Legal Services, that he gave a full copy of the 1975 report to Miguel Herrero, Executive Director of San Juan, in September of 1976. Moreover, two members of the 1975 evaluation team, Cesar Perales and Jose Lugo, met with Miguel Herrero on March 21, 1975, and went over their preliminary findings and conclusions with him. Similarly, on the completion of the 1977 evaluation, the findings and conclusions were given to Executive Director Herrero. We think that the procedure actually followed by both evaluation teams disposes of San Juan's contention on appeal that it has not been given the opportunity to take corrective action. San Juan's attitude throughout this entire matter has been that it was without fault and that the evaluations were products of bias and prejudice by Region II of Legal Services. We find no basis in the record for such a claim.

To summarize, we find and rule as follows on the claims San Juan has raised on appeal:

1. San Juan received a full, fair, and timely hearing;

2. San Juan had an opportunity to take corrective action after the 1975 evaluation, and failed to do so;

3. By any standard of review, Legal Services had ample grounds for concluding, after the report and recommendations of the hearing examiner of February 5, 1979, that San Juan's funding should be terminated; and

4. The unsubstantiated claim, which we do not accept, that the district court decided the case only on the basis of the memoranda submitted by the parties without considering the record and exhibits is irrelevant because we have considered the entire record of the hearing in making our decision.

*Affirmed.*