### NATIONAL CLIENTS COUNCIL, INC., Plaintiff,

v.

### LEGAL SERVICES CORPORATION, et al., Defendants.

#### Civ. A. No. 85–2398.

United States District Court, District of Columbia.

Aug. 19, 1985.

Matthew Jacobs, Covington & Burling, Washington, D.C., for plaintiff.

Carl S. Rauh, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The principal defendant in this action, the Legal Services Corporation (LSC), is a non-profit organization created in 1974 by the enactment of the Legal Services Corporation Act (LSCA/the Act), 42 U.S.C. § 2996, et seq.[1] Under the Act, LSC administers a program of contracts and grants of federal funds to a variety of legal-service related organizations. The vast majority of these grantees provide free legal assistance and representation in non-criminal matters to individuals who are otherwise financially unable to afford such services. See id. §§ 2996b(a). However, the Act also authorizes LSC to award grants to organizations that do not directly provide legal assistance to the poor, but instead fulfill other functions necessary to effectuate the purposes of the Act. See id. § 2996e(a)(1)(B) & (a)(3).

Pursuant to this latter authority, LSC awarded a total of approximately $4 million in yearly federal grant funds to the plaintiff, the National Clients Council, Inc. (NCC), from 1976 to 1983. Under these grants NCC was to provide technical assistance and training to the boards of local Legal Services organizations throughout the country, as well as individual Legal Services clients. Likewise, NCC was to educate local program board members as to their responsibilities, inform clients of the function of legal services projects and

[1] The President of Legal Services Corporation is also named as a defendant in this action.

their rights under those projects, and serve as a conduit for client input into the legal services network.

The National Clients Council has brought this action challenging a July 15, 1985 final determination of the Legal Services Corporation to deny NCC refunding for fiscal year 1984.[2] Plaintiff is challenging the 1984 refunding decision now, in 1985, despite the fact that it received interim funding throughout the period of administrative review by LSC from January 1984 to July 1985. NCC contends that this issue is not moot because it will have a material impact on its 1985 application for refunding, held in abeyance by LSC pending final resolution of the 1984 funding issue. NCC maintains that unless it prevails in this action, and the Court determines that LSC improperly denied it refunding for 1984, NCC will not be deemed to have been an official grant recipient during 1984, and therefore will not be entitled to a presumption of refunding for 1985 enjoyed by existing grantees.

This case was originally brought before the Court on plaintiff's motion for a preliminary injunction, filed contemporaneously with the complaint on July 26, 1985. NCC contends that, due to LSC's final determination denying refunding and the resulting cessation of interim funding to NCC, it will have exhausted all of its financial resources by approximately August 16, 1985. NCC therefore sought a preliminary injunction requiring LSC to continue interim funding to NCC, and precluding LSC from taking any adverse action on NCC's pending application for funding 1985, or from committing elsewhere any funds to which NCC may be entitled for 1984 and 1985, until resolution of the merits of this action. However, at the August 7, 1985 hearing on plaintiff's motion, the parties concurred, upon inquiry from the Court, that the merits of the action may be resolved at this time on the basis of the record and pleadings currently before the Court. Accordingly, the Court shall treat this matter as one presenting cross-motions for summary judgment. See Fed.R.Civ.P. 65(a)(2).[3]

## I. Statement of Facts

### A. The Review Team

On October 20, 1983 the defendant, Legal Services Corporation, notified NCC that a review team was being sent to NCC headquarters on October 26, 27, and 28 to monitor NCC's operations and interview NCC staff. This notification also requested that NCC compile copies of "policy statements, position papers and other presentations of the National Clients Council." In addition, LSC requested access to twenty-four other categories of documents relating to NCC's activities and management. See Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Exhibit 3.

In accordance with the notice, the review team visited NCC's Washington, D.C. headquarters on the days indicated. In addition, two members of the team also visited selected NCC regional offices. The review team, appointed by LSC to perform the task of an organization-wide review of

---

2. The LSCA does not explicitly provide for judicial review of final determinations of the Legal Services Corporation. Nevertheless, such judicial review has been recognized as available in the district courts under general federal question jurisdiction, 28 U.S.C. § 1331, in light of the general presumption favoring judicial review, see Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967) ("judicial review of final agency action will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress"), and legislative history of the LSCA indicating Congressional presumption that judicial review would be available. See San Juan Legal Services, Inc. v. Legal Services Corp., 655 F.2d 434,

438–39 (1st Cir.1981) (citing H.R.Rep. No. 310, 95th Cong. 1st Sess. 33, reprinted in [1977] U.S. Code Cong. & Ad.News 4503, 4525–26; see also Spokane City Legal Services v. Legal Services Corp., 614 F.2d 662, 666–67 (9th Cir.1980).

3. Despite the plaintiff's forecast that it will have exhausted its financial resources by August 16, 1985, plaintiff did not seek a temporary restraining order. Instead, plaintiff requested expedited consideration of its motion for a preliminary injunction. At the August 7, 1985 hearing on the motion plaintiff agreed that a ruling from this Court on the merits of this action by August 19, 1985 would be acceptable.

NCC, consisted of both outside independent consultants and LSC employees.[4]

During the review team's on-site visits, NCC refused to grant access to certain documents and records, including training files, technical assistance files, and correspondence files. Despite the failure to gain access to all of the requested records and documents, the review team nevertheless completed its evaluation of NCC and submitted a report to the Legal Services Corporation.

### B. *Preliminary Denial of Refunding*

On the basis of the review team's evaluation and report, LSC notified NCC on January 4, 1984 of its preliminary determination to deny refunding to NCC for the 1984 calendar year under section 1625.3 of LSC's regulations, which provides that a grantee may be denied refunding when "there has been a significant failure by the recipient to comply with a provision of law or a rule, regulation, guideline or instruction issued by the Corporation, or a term or condition of a current or prior grant from or contract with the Corporation." 45 C.F.R. § 1625.3(b). The notification cited seven deficiencies in NCC's operations as revealed by the October review, generally alleging an extensive pattern of financial abuse by NCC's Board and personnel, as well as numerous organizational and managerial failings, and the failure to provide the review team access to documents. *See* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Exhibit 4. Despite the preliminary determination to deny refunding, under the Legal Services Corporation Act and LSC's own regulations, NCC was entitled to continue receiving interim funding at its 1983 level pending a final determination on the issue. 42 U.S.C. § 2996f(a)(9) (1976); 45 C.F.R. § 1625.15.

### C. *The Administrative Review Process*

On January 13, 1984, NCC notified LSC of its intent to challenge the preliminary determination to deny refunding, and requested an administrative hearing on the matters set forth in the January 4, 1984 notice. In response, LSC appointed Richard S. Gebelein, a former Attorney General for the State of Delaware, who was then in private legal practice but has since been appointed to the Delaware Superior Court bench, to serve as Presiding Officer in this matter. *See* 45 C.F.R. § 1625.6.

Upon initiation of the administrative review process by the Presiding Officer, NCC asserted its intention to contest all of LSC's factual bases for the denial of refunding. On March 5, 1984 the parties commenced an administrative hearing before the Presiding Officer, which continued for twenty hearing days, concluding on April 19, 1984. The record of the hearing includes 5000 pages of transcript, including the testimony of sixteen witnesses, as well as 227 separate exhibits. After the conclusion of the hearing and the rendering of the Presiding Officer's post-hearing ruling on evidentiary matters, the plaintiff sought leave to file two affidavits of its President, Ms. Nelwynne Hollie, which primarily contained information relating to efforts undertaken by NCC to modify, change and improve its own operations after January, 1984, and even after conclusion of the administrative hearing. Over the strenuous objection of LSC, the Hollie affidavits were admitted by Judge Gebelein.

On May 1, 1985 Judge Gebelein issued his Opinion and Recommended Decision, setting forth his factual findings and legal conclusions, and reaching his recommendation that NCC be denied refunding. Four of Judge Gebelein's findings and conclusions supported his recommended decision to deny refunding.

First, the Presiding Officer found that NCC improperly used grant funds over a number of years, and failed to employ proper measures to account for the expenditures of grant funds. Specifically, the

---

**4.** The review team was led by Professor Frank E. Booker of the University of Notre Dame School of Law, an experienced clinical educator and poverty lawyer. The review team also included Edward McGuire, James Grey, Jr., Alberto Lopez, Joel Thimell, and Gotindes Singh.

Presiding Officer found that NCC spent thousands of dollars to rent automobiles for the personal use of its staff, especially for the personal use of Mr. Veney, NCC Executive Director until 1984. Mr. Veney alone was found to have rented cars for 260 days in 1983 at an expense of $12,000, using the cars primarily for transportation from his Columbia, Maryland home to NCC's Washington, D.C. headquarters. The Presiding Officer also found that NCC made improper salary advances to its employees for in excess of six years. Likewise, the Recommended Decision found that federal grant funds were used by NCC personnel for private expenses, primarily travel expenses, and that NCC completely lacked an adequate system of recordation and verification of travel expenses. Judge Gebelein concluded that these financial abuses "[a]lone constitute a substantial basis for denying refunding." (Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Exhibit 8 [hereinafter "Recommended Decision"], at 10–22; 34–35.)

Second, the Presiding Officer found that NCC had improperly withheld documents from the review team, constituting a "significant failure to comply with a grant condition in that it is a major violation of the ability of LSC to adequately monitor NCC's compliance with other conditions, law, regulations, etc." Again, the Presiding Officer found that under the circumstances of the case, this alone was enough to deny refunding. (Recommended Decision at 8–10; 36–37.)

Third, the Presiding Officer found that NCC failed to provide an effective mechanism for input to the Legal Services establishment by clients and client board members and that NCC was not effectively or efficiently using the resources at its disposal to fulfill its function of providing information to local program board members and clients. Specifically, he found that NCC did not maintain adequate mailing lists of its own members and discontinued its regular newsletter purportedly due lack of funds. Furthermore, Judge Gebelein found that NCC failed to serve as a funnel of information from the local program boards and clients council to LSC, and found especially lacking any regular contact between NCC and LSC regional offices. The Presiding Officer found that NCC thereby failed to fulfill one of its primary purposes—"to find out the problems of local board members and present those matters to the Legal Services Corporation Board and regional offices." Recommended Decision at 37–38. The Presiding Officer concluded that, in light of the additional problems with NCC, this constituted a substantial basis for denying refunding. (Recommended Decision, at 23–25; 37–38.)

Finally, the Presiding Officer concluded that "nothing has become more obvious during this hearing and review of the evidence than that NCC lacked any effective or economical plan for delivery of its specialized services to its clients." Recommended Decision, at 40. The decision found that NCC persistently failed over a number of years to correct the financial abuses, and generally failed to properly monitor its own activities. Because of this, the decision found that NCC impeded its ability to provide services to the community, providing a substantial basis for the denial of refunding. (Recommended Decision, at 29–30; 40–41.)

## D. *Final Determination Denying Refunding*

NCC subsequently sought review by LSC of Judge Gebelein's Opinion and Recommended Decision. *See* 45 C.F.R. § 1625.11. Pursuant to a motion filed by NCC on May 21, 1985, alleging that Acting President of the LSC, Thomas J. Opsut, was biased against NCC by virtue of testimony he had given before Congress, Mr. Opsut recused himself from review of this matter on June 7, 1985. LSC Vice President, Charles W. Jarvis, was appointed to render a final decision in this matter. On July 15, 1985, Jarvis issued a final administrative determination, adopting Judge Gebelein's Opinion and Recommended Decision, and further finding that LSC was not statutorily re-

quired to attempt to resolve difficulties with NCC before denying refunding, but had nevertheless made such efforts unsuccessfully, and that conditional refunding of NCC was not erroneously rejected as an alternative to denying refunding altogether. *See* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Exhibit 9.

With the July 15, 1985 final determination, LSC ceased the interim funding which NCC had received throughout the administrative process, totalling $830,775 at $43,725 per month for the nineteen months from January 1984 to July 1985.

## II. *Discussion*

The plaintiff has raised essentially five challenges to LSC's denial of refunding for 1984. First, plaintiff contends that LSC's final determination on the denial of refunding is improper because LSC failed to first attempt informal reconciliation with NCC. Second, NCC asserts that the burden of proof for denial of refunding hearing embodied in LSC's regulation, and applied by the Presiding Officer, was unlawful under the 1984 Appropriations Act for the Legal Services Corporation, Public Law No. 98–166, 97 Stat. 1071. Third, NCC alleges that the Presiding Officer's Recommended Decision improperly failed to address the option of granting NCC conditional refunding rather than denying refunding altogether. Fourth, NCC maintains the Presiding Officer's determination that NCC failed to correct financial inadequacies is arbitrary and capricious, and unsupported by the evidence on the record. Finally, NCC argues that the Presiding Officer erred, as a matter of law and fact, in concluding that NCC improperly denied the LSC review team access to records.

## A. *Standard of Review*

■ In considering the standard of review appropriate to this case, the Court notes that because the Legal Services Corporation is not a department or agency of the federal government, the Administrative Procedure Act, 5 U.S.C. §§ 701–706, is not strictly applicable. *See Spokane County*

*Legal Services v. Legal Services Corp.*, 614 F.2d 662, 669 (9th Cir.1980). Nevertheless, this Court finds that standards of review analogous to those embodied in the APA are appropriate in this case. Accordingly, issues of law or procedure are properly questions for the Court to review *de novo*. *See* 5 U.S.C. § 706(2)(C) & (D). With respect to issues involving review of the evidence presented at the administrative hearing, plaintiff contends that the APA's "substantial evidence" test, applicable to formal agency action under section 706(2)(E) should be applied, as opposed to the arbitrary and capricious test for informal agency action under section 706(2)(A). While this Court concurs that this case is essentially similar to judicial review of formal agency action, the Court notes that the APA's "substantial evidence" test does not review agency action for a particular quantum of proof, but instead requires the reviewing court to determine only if the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *see also American Textile Manufacturers Institute, Inc. v. Donovan*, 452 U.S. 490, 522–23, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981). Consequently, the real consideration for this Court is whether, considering *all* of the evidence introduced at the hearing, *see Universal Camera*, 340 U.S. at 487–88, 71 S.Ct. at 463–64, there was a rational basis for the decision rendered. *See Spokane City*, 614 F.2d at 669; *San Juan Legal Services, Inc. v. Legal Services Corp.*, 655 F.2d 434, 439 (1st Cir.1981). Therefore, although the "arbitrary and capricious" test of the APA is generally applicable to review of informal policy making and rule making actions by agencies, while the "substantial evidence" test is applied to review of formal agency action taken on the basis of record evidence, because both tests ultimately consider the rationality of the underlying decision, this Court finds the language and considerations of both tests applicable to the case at hand. *See Spokane City*, 614 F.2d at 669

n. 11 (no discernible difference between "rational basis" test and "arbitrary and capricious" standard; "In the eyes of the law an administrative action not supported by evidence or lacking a rational basis is deemed arbitrary and capricious") (quoting *O'Beirne v. Overholser*, 193 F.Supp. 652, 656 (D.D.C.1961), *rev'd on other grounds*, 302 F.2d 852 (D.C.Cir.1961).

## B. *The Merits*

### 1) *Informal Reconciliation*

The plaintiff contends that LSC erred in denying refunding to NCC for 1984 without first making efforts to informally resolve the matter. Plaintiff maintains that section 1618.5 of LSC's own regulations forbids LSC from taking any kind of formal disciplinary action against a grantee unless attempts at informal resolution have been unsuccessful. *See* 1618.5(a). LSC contends, however, that subsection (b) of section 1618.5 renders that regulation specifically applicable only to suspensions and terminations of funding and therefore inapplicable to a denial of refunding for failures to comply with the LSCA or the particular grant's conditions. *See* 45 C.F.R. § 1618.5(b).[5]

■ This Court need not decide, however, whether section 1618.5 requires informal efforts at reconciliation before LSC may initiate efforts to deny refunding in light of the fact that plaintiff waived this issue by failing to present it to the Presiding Officer. NCC first raised this challenge *after* the Presiding Officer rendered his Recommended Decision, when the plaintiff appealed that decision for further administrative review by LSC.[6] This Court cannot sanction plaintiff's effort to pursue a challenge by which it attempts to vitiate the entire nineteen month process before

the Presiding Officer, involving considerable expenditure of time, effort and money by all participants, when such issue was not even raised with the Presiding Officer.

■ Moreover, even if informal reconciliation efforts are required, the record in this matter contains more than adequate evidence than LSC did in fact make such efforts over a number of years. As the Presiding Officer's Recommended Decision clearly indicates, LSC made repeated requests to NCC from as early as 1978 to correct fiscal management problems, and gave NCC repeated opportunities to do so. The evidence supporting that conclusion was clearly summarized by the Presiding Officer, who stated:

> The areas of inadequacies identified to NCC were the lack of any coherent system relating to travel advances, the problems and abuses relating to salary advances, and the lack of any monitoring or system of checks and balances to insure against financial abuse or misuse by employees.

> In particular, it is highly significant to note that in spite of 1978 and subsequent warnings and admonitions relating to salary advances to employees, the abuses continued even after the notice of denial of refunding was made in this case some five years after LSC first complained of this problem.

> Likewise, in the area of travel advances and checks and balances, repeated references to the inadequacy of the system did not prevent NCC from continuing to follow the same procedures resulting in the ineffective, inefficient and uneconomical expenditure of substantial amounts of grant fundings.

Recommended Decision, at 29.

This Court cannot agree with plaintiff that these efforts by LSC do not amount to

---

**5.** A denial of refunding is an administrative decision not to award a new grant to an existing grantee for the coming year, as distinguishable from termination or suspension of funding, both of which involve the cessation of funds during the term of an existing grant. *See* 45 C.F.R. §§ 1606.2 (termination); 1623.2 (suspension); 1625.2 (denial of refunding).

**6.** Plaintiff has argued here that LSC failed to initiate informal reconciliation, but instead evidenced a determination from the beginning to deny NCC refunding. At oral argument, however, NCC expressly declined to pursue the argument, rejected by the Presiding Officer, that LSC's actions in attempting to deny refunding to NCC were the product of political bias. Recommended Decision at 31.

attempts at informal reconciliation of perceived problems. Instead, this Court finds that any requirement of informal consultation is satisfied by giving the recipient notice of the perceived deficiencies, and an opportunity to correct them, before initiating adverse action. This record indicates that LSC gave NCC not only an adequate time to correct identified problems, but perhaps an unreasonably excessive amount of time to halt blatantly improper or irresponsible use of federal funds entrusted to LSC and NCC for the benefit of less fortunate members of our society.

## 2) The Burden of Proof

█ On November 30, 1983 the Legal Services Corporation published final rules in the Federal Register, which among other things amended the procedural rule previously applicable to the procedures for both the termination of funding and denial of refunding to create separate rules for termination, 45 C.F.R. § 1606, and denial of refunding, 45 C.F.R. § 1625. *See* 48 Fed. Reg. 54,196 (1983).[7] The old regulation governing both termination and denial of refunding provided that "the Corporation [would] have the obligation of establishing a substantial basis for terminating the grant or contract or denying refunding." 45 C.F.R. § 1606. Section 1625 was changed by the 1983 amendments to provide that for the denial of refunding:

> The Corporation shall have the obligation of proving, by a preponderance of the evidence contained in the record, any disputed fact relied upon by the Corporation as justification for denial of refunding; with respect to all other issues, the recipient shall have the obligation to establish that the Corporation lacked a substantial basis for denying refunding.

7. *See, supra* footnote 5 (distinguishing termination of funding, suspension of funding, and denial of refunding).

8. Contrary to the plaintiff's position that the 1984 Appropriations Act created a presumption of refunding for grantees, LSC maintains that Congress itself intended to shift the entire burden of proof in denial of refunding proceedings to the grantee, requiring the grantee to "show

45 C.F.R. § 1625.9. In the present case, the Presiding Officer specifically cited this regulation as the applicable standard, and made his findings of fact separate from his determinations as to whether NCC established that the proven facts did not constitute a substantial basis for denying refunding.

The plaintiff contends that LSC's amendment of the procedures applicable to the denial of refunding violated a presumption of refunding for existing grantees established by the LSCA and the LSC 1984 Appropriations Bill, Pub.L. No. 98–166, 97 Stat. 1071, by shifting the burden of proof from the Corporation onto the grantee, and thereby effectively creating a presumption of refunding.

This Court cannot agree, however, that section 1625.9 as applied to NCC in its amended form placed any burden of *proof* on NCC. The regulation clearly provides that LSC bore the burden of proving all contested facts by a preponderance of the evidence. The regulation did provide that NCC had the obligation to establish that the facts proven did not provide a sufficient basis for denying refunding. As such, NCC clearly did not bear any burden of proof, but at most a burden of persuasion—to argue more effectively than LSC, and convince the Presiding Officer that the proven facts were not "substantial" enough to deny refunding. Therefore, because the proceeding could not go forward unless the Presiding Officer found that LSC had in fact proven some facts by a preponderance of the evidence, this Court finds that the procedures employed did not in any sense violate any initial presumption of refunding to which NCC may have been entitled.[8]

cause" why the proposed administrative action should not be taken. *See* Pub.L. No. 98–166, 97 Stat. 1071 (1983). Accordingly, after passage of the 1984 Appropriations Act, but also after NCC's process of administrative hearings commenced, LSC again amended its regulations, this time to shift the entire burden of proof to the grant recipient. *See* 49 Fed.Reg. 2924 (1984). In light of this Court's holding above and the application of the earlier regulation to

### 3) & 4). *Financial Abuses and Conditional Refunding*

■ NCC's third and fourth challenges to the denial of its refunding are so closely related as to merit joint discussion. Essentially, considering both arguments, plaintiff contends that the Presiding Officer's Recommended Decision is arbitrary and capricious in that it failed even to *consider* conditional refunding as an alternative to the complete denial of refunding, and, moreover, is arbitrary, capricious and unsupported by the record in failing to *grant* at least conditional refunding in light of uncontroverted evidence of NCC progress at reforming past inadequacies.

LSC's denial of refunding regulations expressly authorize the presiding officer to recommend "[g]ranting refunding subject to any modification or condition that may appear necessary and appropriate on the information disclosed at the hearing or adduced from the record...." 45 C.F.R. § 1625.10. This Court cannot concur with plaintiff that the absence of an explicit discussion of conditional refunding in the Presiding Officer's Recommended Decision indicates an arbitrary and capricious failure even to consider the option. Instead, an examination of the history of this case before the Presiding Officer, as well as the Recommended Decision itself, makes evident that conditional refunding was considered by Judge Gebelein and implicitly rejected by his recommendation that refunding of NCC be denied.

After the close of the hearing, the Presiding Officer issued a Preliminary Opinion and Recommended Decision, ruling on a continuing relevance objection that had been made by NCC to LSC's introduction of evidence of events subsequent to the review team evaluation or the January 4, 1985 preliminary determination to deny refunding. In ruling that the evidence was relevant and admissible Judge Gebelein stated:

> While normally this objection would have considerable merit, part of the defense of NCC has been to suggest that the difficulties of the past were primarily the responsibility of the Executive Director who is no longer in that position. LSC argues that NCC's conduct since the evaluation, the notice of denial of refunding and the resignation of its Executive Director rebuts that defense. In this area, I must agree with LSC's position. In essence, NCC is arguing that it has rehabilitated its problem area. LSC may meet that argument with any evidence existing to the contrary.

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Exhibit 7, at 14 (footnote omitted).

Likewise, prior to reaching the merits of the case, the Presiding Officer's Recommended Decision held that two affidavits of Nelwynne Hollie, former President of NCC Board of Directors and now Executive Director of NCC, which recounted efforts by NCC to modify, change and improve its own operation since the evidentiary hearing were relevant and admissible. In doing so, the Presiding Officer indicated that the affidavits were of some value in considering the accountability of the present Board, and NCC's ability to continue operation in an effective manner.

Judge Gebelein's evidentiary rulings outlined above, and the discussion of the admitted evidence in his Recommended Decision, clearly indicate that he recognized and considered conditional refunding as an option. Judge Gebelein allowed such evidence to be introduced precisely because it bore on what NCC could be expected to do in the *future*, not because it in any way refuted or even mitigated wrongs committed in the past. These are considerations at the heart of conditional refunding, as distinguishable from a determination that complete refunding is merited because the charges against the grantee are baseless or insubstantial. Accordingly, this Court finds the Presiding Officer's consideration of conditional refunding implicit in his overall treatment of

---

NCC, this Court need not determine whether a grant recipient is entitled to a presumption of refunding which is violated by placing the burden of proof on it.

the case as well as the discussion of the evidence in his Recommended Decision.

Furthermore, whatever argument plaintiff may have that the Presiding Officer failed to consider conditional refunding, there is no question that the LSC Vice President, Mr. Jarvis, considered and rejected that alternative when NCC appealed the Recommended Decision for LSC's final decision. *See* 45 C.F.R. § 1625.11. At that time, Mr. Jarvis had the full record before him for review, and nevertheless concluded that conditional refunding was not merited under the circumstances. At most, plaintiff was entitled to have conditional refunding considered, and it clearly was before LSC reached a final decision on the denial of refunding.[9]

Neither can this Court find that the submission of the affidavits of Nelwynne Hollie attesting to NCC's post-hearing progress at reform rendered the decision to deny refunding on the basis of financial abuses arbitrary and capricious, or unsupported by substantial evidence. Plaintiff contends that Ms. Hollie's affidavits were uncontroverted, and thereby constituted the only evidence on the record of NCC's current status. Even so, this Court cannot find the decision to deny NCC refunding improper. The Recommended Decision conveys the Presiding Officer's opinion that all efforts at reform made by NCC came too late, and under too much pressure of the threat of lost funding, to provide a reassuring basis for granting refunding, even conditionally. Recommended Decision, at 30, 35. This Court can find no sound basis to second-guess that judgment or label it "arbitrary and capricious."

At oral argument before this Court NCC also asserted that, in light of LSC's obligation under the Act to "ensure that ... appropriate training and support services are provided in order to provide ... assistance to ... significant segments of the population of eligible clients," 42 U.S.C. § 2996f(a)(2)(C)(ii), the decision to deny re-

funding to NCC despite evidence of its efforts at reform was arbitrary and capricious because NCC is the only existing organization capable of providing such services. In making this argument, NCC relies on the express finding of the Presiding Officer that there is a need for an independent organization, outside of LSC itself, to serve as a conduit of client input into the Legal Services program, and that LSC had failed to establish that any existing organization other than NCC could fulfill this function. Recommended Decision, at 30–31.

However, the Presiding Officer also found that NCC had failed in its mission to provide a conduit of information to local Board members and clients as well as a conduit back to the Legal Services program from those individuals. Recommended Decision, at 23–24. The Presiding Officer found that this failure of NCC to fulfill this function, one of its primary functions, constituted an additional substantial basis for the denial of refunding. Recommended Decision, at 24.

Therefore, although LSC has an obligation to ensure that the services intended to be provided by NCC are in fact provided, this Court cannot conclude that an organization that has been found corrupt and ineffective in the past must be refunded solely on the basis of its own assurances that it will improve simply because no ready alternative has yet been found. Instead, given LSC's determination that NCC's assurances and evidence of reform were inadequate, LSC must now find an alternative to actually fulfill the necessary functions, or be prepared to be called to account for its failure to do so in some legislative or judicial proceeding separate from this action.

### 5) *Access to Documents*

The plaintiff also challenges, as an error of law and a finding unsupported by the evidence on the record, the Presiding Offi-

---

**9.** Mr. Jarvis' conclusion on the issue is clearly the important question since, had the Presiding Officer recommended conditional refunding, LSC would have had the right to appeal that decision in order to obtain a contrary final determination. *See* 45 C.F.R. § 1625.11(a).

cer's conclusion that NCC's failure to grant the review team access to all requested records constituted a substantial basis to deny refunding.

In seeking access to the documents, LSC relied on Condition 6 of NCC's grant, by which NCC agreed to

cooperate with all data collection and evaluation activities undertaken by the Corporation and give any authorized representatives of [LSC] . . . access to all records, books, papers or documents.

█ The plaintiff maintains that this grant provision is in excess of LSC's statutory authority. NCC maintains that under the provisions of the LSCA pertaining to the maintenance and disclosure of records, LSC is entitled only to require grantees to maintain records "with respect to funds provided by grant or contract" and to demand access to those particular documents at "reasonable times." 42 U.S.C. § 2996g(b).

The defendant argues, however, that its right of access to documents does not derive solely from § 2996g(b)'s right to require certain categories of documents to be maintained and to allow inspection of them, but rather from LSC's broader right under § 2996f(d) to monitor the activities of grantees, thus encompassing a broader category of documents.

In light of this Court's affirmance of LSC's denial of refunding on the independently sufficient grounds of NCC's financial abuse and mismanagement and its failure to fulfill its primary functions under the grant, this Court need not reach the issue of NCC's denial of access to documents. Nevertheless, as a matter of law, this Court fully concurs with the Presiding Officer's conclusion that LSC's obligation to evaluate and review its grant programs to ensure compliance with the law provides sufficient statutory authority to support the broad right of access to documents set forth in Condition 6 of the grant. "Without reviewing technical assistance and correspondence files, LSC cannot be sure that funds are not or were not being spent for prohibited activities." Recommended Decision, at 36.

█ Likewise, this Court cannot accept plaintiff's contention that, because NCC later agreed to disclose the documents in question, finding the denial of access to the documents a substantial basis for the denial of refunding was arbitrary and capricious. On February 7, 1984 counsel for NCC did in fact submit a proposal to the Presiding Officer for the disclosure of all documents either to LSC, or to the Presiding Officer for *in camera* review. NCC contends that, in light of this proposal, LSC's continued reliance on this issue as a basis to deny refunding was arbitrary and capricious, evidencing LSC's unreasonable desire to deny refunding and refusal to consider informal reconciliation.

However, NCC's offer came well after the initial request for documents by the review team, and only when NCC was under the threat of losing refunding, a process which its denial of access to the documents could have potentially prevented being initiated. Therefore, this Court cannot conclude that LSC acted arbitrarily and capriciously in pursuing action against NCC for harms that could not be undone by NCC's later efforts, or that the denial of refunding on this basis is not supported by substantial evidence.

### Conclusion

Therefore, for the reasons set forth above this Court finds that the final determination of LSC denying refunding of NCC should be affirmed, and summary judgment granted for the defendant.